**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
Timothy W. Evanston, State Bar No. 319342
*tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:   714 445-1000
Facsimile:   714 445-1002

Counsel for David Stapleton, Receiver

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                            Plaintiff,<br><br>    v.<br><br>SILICONSAGE BUILDERS, LLC aka SILICON SAGE BUILDERS and SANJEEV ACHARYA,<br><br>                      Defendants. | Case No. 3:20-cv-09247-SI<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER, DAVID STAPLETON, FOR ORDER APPROVING SALE OF REAL PROPERTY OWNED BY 138 BALBACH, LLC FREE AND CLEAR OF LIENS**<br><br>Date:    August 20, 2021<br>Time:    10:00 a.m.<br>Crtrm.:  1 – 17th Floor (hearing via Zoom)<br>Judge:  Susan Illston |

## I.    INTRODUCTION

In accordance with Local Rule 66-2 and paragraphs 7 and 35 of the *Order on Plaintiff Securities and Exchange Commission's Motion for Appointment of Receiver* [Docket No. 63] (the "Receivership Order"), and the law governing federal equity receiverships, David Stapleton, the Court-appointed receiver (the "Receiver") over SiliconSage Builders, LLC, and its subsidiaries and affiliates (together, the "Receivership Entities"), respectfully requests that the Court enter an order in aid of the receivership that authorizes the Receiver to sell the real property owned by 138 Balbach, LLC, located at 138 Balbach St., San Jose, CA, APN 264-77-001 (the "Property") free and clear of liens, with the liens to be paid from the sale proceeds through escrow.  The sale is

1  expected to generate approximately $12.6 million for the benefit of the receivership

2  estate.

3

4  **II.**     **BACKGROUND FACTS**

5         **A.**     **Procedural Background**

6         In late December 2020, the Securities and Exchange Commission (the "SEC")

7  commenced this litigation against defendants SiliconSage Builders, LLC, and Sanjeev

8  Acharya (together, the "Defendants") alleging violations of federal securities laws.  On

9  February 10, 2021, the Court issued a preliminary injunction and entered the

10  Receivership Order.  Section VIII of the Receivership Order authorized the Receiver to

11  retain brokers and to take the necessary steps to sale or lease the real property owned

12  by the Receivership Entities.  Last month, the Court entered an order excusing the

13  Receiver's compliance with 28 U.S.C. § 2001 in connection with the sale of real property

14  so that the Receiver only needs to present the proposed sale to the Court and not obtain

15  three appraisals or run a formal auction process.

16         **B.**     **The Receiver Has Accepted an Offer for the Purchase of the Real**

17                    **Property Owned by 138 Balbach, LLC**

18              **1.**     **The Terms of the Proposed Sale**

19         One of the Receivership Entities is 138 Balbach, LLC.  138 Balbach, LLC, owns

20  the Property, which is an apartment building in downtown San Jose with 101 residential

21  units, nearly all of which are rented.  Pre-receivership, 138 Balbach, LLC, retained JLL to

22  list and market the Property and, after doing research, the Receiver decided to continue

23  JLL's engagement and retained it as his broker to continue to list and market the

24  Property.

25         After several months of aggressive marketing which is described in more detail in

26  the accompanying declaration of Scott Bales, the Receiver has accepted an offer from

27  Carmel Partners Realty VII, LLC, a Delaware limited liability company (the "Buyer"), to

28  purchase the Property for $54.2 million.  Pursuant to the Purchase and Sale Agreement

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

that was executed on June 23, 2021 (the "Purchase Agreement"), the Buyer has deposited $1 million with escrow and has until July 23, 2021, to conduct due diligence. The deposit will become non-refundable if the Buyer does not terminate the Purchase Agreement prior to the deadline to conduct due diligence, unless the Court does not authorize the Receiver to proceed with this sale.  At the closing, the Buyer will assume liability under all of the tenant leases, including the obligation to return any security deposits in accordance with the terms of the tenant leases.  In addition, the Buyer has the option to elect to assume any executory contracts or unexpired leases, which would include the property management agreement.  If the Buyer assumes any contracts, then the Buyer will assume the liabilities under those contracts.  The closing is to occur on or before the later of thirty days after the completion of due diligence and ten days after entry of an order of this Court approving the sale.  The sale is "as-is, where-is" and without any representations or warranties.  A copy of the Agreement is attached as Exhibit "1."  This summary is not intended to be a complete description of the terms of the Purchase Agreement

## 2. The Senior Secured Lender Has Agreed to Waive All Default Interest Pursuant to a Forbearance Agreement

The Property is subject to a number of liens that will be paid from the proceeds of the sale at the closing.  PFP Holding Company V, LLC ("PFP") holds the first priority deed of trust against the Property, which secures a loan in the principal amount of $39,625,000.  As long as the sale of the Property closes by October 1, 2021, and it is paid in accordance with the forbearance agreement, PFP has agreed to waive all default interest and instead charge the non-default.  A copy of the forbearance agreement (the "Forbearance Agreement") is attached as Exhibit "2."  If the sale of the Property does not close by October 1, 2021, then the Forbearance Agreement is of no further force or effect and the parties are back in their original negotiating position.  As of July 14, 2021, and with interest at the non-default rate, PFP is owed $39,882,922.70, net of reserves of $256,042.15.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2875441.1

3

### 3.    The Equity Analysis

From the sale of the proceeds, and based on the preliminary title report that is attached as Exhibit "3" (the "Preliminary Title Report"), the Receiver intends to pay the following liens at the closing:

| Description of Lien or Item To Be Paid | Estimated Amount To Be Paid[1] |
|---|---|
| PFP Holding Company V, LLC | $39,882,922.70[2] |
| Mechanic's Lien of Alcal Specialty Contracting, Inc. | $29,071.35 |
| Mechanic's Lien of Detail Construction & Waterproofing | $90,225.00 |
| Mechanic's Lien of California Fire Systems, Inc. | $97,830.63 |
| Mechanic's Lien of Pace Supply Co. | $10,653.92 |
| Mechanic's Lien of D&D Windows | $81,201.01 |
| Mechanic's Lien of A&D Automotive Gate Company | $50,337.16 |
| Mechanic's Lien of St. Francis Electric | $28,209.69 |
| Mechanic's Lien of Express Fence | $12,736.00 |
| Total | $40,283,187.46 |

The Preliminary Title Report reflects that property taxes have been paid and are current, but if any are due, the Receiver will pay those at the closing.  Although the Receiver does not anticipate any additional mechanic's liens, if any arise that must be paid through escrow in order to convey title free and clear of liens, then the Receiver requests authority to pay those liens.  Any such mechanic's liens, together with the liens listed in the chart above, are hereinafter referred to as the "Liens."  For avoidance of doubt, the Liens are comprised of items 13 through 23 of the Preliminary Title Report.

---

[1] These amounts are estimates only and are subject to change.

[2] This amount is as of July 14, 2021.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel  714 445-1000  •  Fax 714 445-1002

These items are not presently disputed but if a dispute arises after the filing of the Motion, the Receiver will give the claimant notice that its Lien is disputed and that the disputed portion of the Lien will attach to the proceeds of the sale pending further Court order.

In addition, the Receiver seeks authority to pay the broker, JLL, its commission of $400,000, plus 2% of every dollar over $50 million, not to exceed $200,000.  Because the sale price is $54.2 million, JLL is entitled to 2% of $4.2 million, which equals $84,000, for a total commission of $484,000, which is less than 1% of the sale price.  A copy of its listing agreement is attached as Exhibit "4."  Out of an abundance of caution, the Receiver is estimating 2% costs of sale, which total $805,663.  With these deductions, the Receiver expects that the receivership estate will net approximately $12.6 million from the sale.

III.     **LEGAL AUTHORITY**

A.     **The Court Has Authority to Approve the Sale of the Property, Which the Receiver Believes Is in the Best Interests of the Receivership Estate**

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws.  Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership.  *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  The Ninth Circuit explained:

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

2875441.1

5

MEMORANDUM OF
POINTS AND AUTHORITIES

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.  The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.  A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also CFTC v. Topworth Int'l, Ltd.,* 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").

With respect to authorizing the sale of property, it is generally conceded that a court of equity having custody and control of property has power to order a sale of the same in its discretion.  *See, e.g., Elliott, supra,* 953 F.2d at 1566 (finding that the District Court has broad powers and wide discretion to determine relief in an equity receivership). "The power of sale necessarily follows the power to take possession and control of and to preserve property." *See also SEC v. American Capital Invest., Inc.,* 98 F.3d 1133, 1144 (9th Cir. 1996), *cert. denied* 520 U.S. 1195 (decision abrogated on other grounds) (*citing* 2 Ralph Ewing Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992) (*citing First Nat'l Bank v. Shedd*, 121 U.S. 74, 87 (1887)).  "When a court of equity orders property in its custody to be sold, the court itself as vendor confirms the title in the purchaser."  2 Ralph Ewing Clark, Treatise on Law & Practice of Receivers § 487).

"A court of equity, under proper circumstances, has the power to order a receiver to sell property free and clear of all encumbrances."  *Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (2d. Cir. 1933).  *See also*, 2 Ralph Ewing Clark, Treatise on Law & Practice of Receivers § 500.  To that end, a federal court is not limited or deprived of any of its equity powers by state statute. *Beet Growers Sugar Co. v. Columbia Trust Co.,*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

3 F.2d 755, 757 (9th Cir. 1925) (state statute allowing time to redeem property after a foreclosure sale not applicable in a receivership sale).

Generally, when a court-appointed receiver is involved, the receiver, as agent for the court, should conduct the sale of the receivership property.  *Blakely Airport Joint Venture II v. Federal Sav. and Loan Ins. Corp.*, 678 F. Supp. 154, 156 (N.D. Tex. 1988).  The receiver's sale conveys "good" equitable title enforced by an injunction against the owner and against parties to the suit.  *See* 2 Ralph Ewing Clark, Treatise on Law & Practice of Receivers §§ 342, 344, 482(a), 487, 489, 491.  "In authorizing the sale of property by receivers, courts of equity are vested with broad discretion as to price and terms."  *Gockstetter v. Williams*, 9 F.2d 354, 357 (9th Cir. 1925).

Here, the proposed sale of the Property is in the best interests of the receivership estate.  The Property was aggressively marketed by JLL, both pre and post-receivership.  JLL began marketing the Property in January 2020.  Prior to the Receiver's appointment, it had engaged with 114 parties who signed confidentiality agreement and conducted various levels of due diligence, gave 30 tours of the Property, and sent more than 6,000 emails to a targeted audience that clicked on the email 4,791 times.  Once the Receiver confirmed the engagement, JLL commenced a new round of marketing in March 2021 and, based on its recommendation, set a call for offers/bid deadline of April 20, 2021.  During this period, JLL gave 17 tours, had 125 additional parties sign confidentiality agreements and conduct some level of due diligence, and received 12 offers by the April 20, 2021, deadline.  JLL then conducted a second round of bidding with these 12 bidders and received 8 updated offers.  The last round was a "best and final" and JLL received 5 updated offers.  The highest offer was from an entity that then withdrew its bid.  The bid from the Buyer is the second highest bid that was received and has been accepted, subject to the approval of this Court.  Because of these marketing efforts, the Receiver is confident that the proposed sale is the highest and best price that can be achieved.  The Receiver estimates that the sale will generate approximately $12.6 million for the estate

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   after payment of the Liens, costs of sale, broker's fees, and any property taxes that are

2   required to be paid.

3   **B.**   **Payment of the Valid Liens, Taxes, and the Broker's Commission**

4   **Should Be Approved**

5   Pursuant to its broad equitable powers with respect to the administration of

6   receivership assets, the Receiver requests that the Court authorize payment from the

7   Property's sale proceeds of the Liens, costs of sale, broker's commission, and any

8   outstanding property taxes.  The Receiver does not yet have payoff demands from the

9   holders of the Liens, but if the payoff demands are consistent with the relief ordered by

10  the Court and the underlying documentation or applicable law and there are no items that

11  require judicial resolution, then the Receiver intends to have them paid through escrow.

12  If there are any disputes, then the lien, or portion thereof, that is in dispute will attach to

13  the proceeds of the sale of the Property with the same priority and validity as they

14  attached to the Property, pending further Court order.  In addition, the Receiver seeks

15  authority to pay JLL's commission, which is $484,000 based on a sale price of $54.2

16  million.  After payment of these items, the proposed sale is expected to net the

17  receivership estate approximately $12.6 million.

18

19  **IV.**   **CONCLUSION**

20  Based on the foregoing, the Receiver requests that the Court enter an order:

21  (1)   Granting the Motion;

22  (2)   Authorizing the Receiver to sell the Property to the Buyer free and clear of

23  the Liens on an as-is, where-is basis, without representations or warranties, with any

24  disputed Liens to attach to the proceeds with the sale validity and priority as they were

25  attached to the Property, pending further Court order;

26  (3)   Authorizing the Receiver to pay the valid and undisputed Liens and taxes in

27  full from the proceeds without further order of the Court;

28

1    (4)    Authorizing the Receiver to pay JLL's commission and ordinary costs of

2    sale of the Property from the proceeds of the sale;

3    (5)    Authorizing any licensed title insurer and the Buyer to rely on the Order as

4    authorizing the Receiver to transfer legal title to the Property free and clear of the Liens,

5    in satisfaction of Exceptions 28 and 29 of the Preliminary Title Report;

6    (6)    Approving the terms of the Forbearance Agreement and the Purchase

7    Agreement and authorizing the Receiver to enter into these agreements;

8    (7)    Authorizing the Receiver to take any and all actions reasonably necessary

9    to consummate the sale of the Property; and

10    (8)    For such other and further relief as the Court may deem just and

11    appropriate.

12

13    DATED:  July 16, 2021                    Respectfully submitted,

14                                             SMILEY WANG-EKVALL, LLP

15

16                                  By:    ___/s/ Kyra E. Andrassy_____

17                                             KYRA E. ANDRASSY
                                             Counsel for David Stapleton, Receiver

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

2

## DECLARATION OF SCOTT BALES

3

I, Scott Bales, declare as follows:

4    1.    I am a managing director of JLL Capital Markets ("JLL").  I know each of the

5 following facts to be true of my own personal knowledge, except as otherwise stated and,

6 if called as a witness, I could and would competently testify with respect thereto.  I make

7 this declaration in support of the *Motion of Receiver, David Stapleton, for Order*

8 *Approving Sale of Real Property Owned by 138 Balbach, LLC Free and Clear of Liens*

9 (the "Motion").  Unless otherwise defined in this declaration, all terms defined in the

10 Motion are incorporated herein by this reference.

11    2.    Prior to the February 2021 appointment of David Stapleton as the Receiver,

12 138 Balbach, LLC, retained JLL to list and market the Property.  JLL began marketing the

13 Property in January 2020.  Prior to the Receiver's appointment, we had engaged with 114

14 parties who signed confidentiality agreement and conducted various levels of due

15 diligence, gave 30 tours of the Property, and sent more than 6,000 emails to a targeted

16 audience that clicked on the email 4,791 times.  Once the Receiver confirmed the

17 engagement, JLL commenced a new round of marketing in March 2021 and, based on its

18 recommendation, set a call for offers/bid deadline of April 20, 2021.  During this period,

19 JLL gave 17 tours, had 125 additional parties sign confidentiality agreements and

20 conduct some level of due diligence, and received 12 offers by the April 20, 2021,

21 deadline.  JLL then conducted a second round of bidding with these 12 bidders and

22 received 8 updated offers.  The last round was a "best and final" and JLL received 5

23 updated offers.  The highest offer was from an entity that then withdrew its bid.  The bid

24 from the Purchaser is the second highest bid that was received and has been accepted,

25 \\

26 \\

27 \\

28 \\

2875441.1

MEMORANDUM OF
POINTS AND AUTHORITIES

1    subject to the approval of this Court.

2         I declare under penalty of perjury under the laws of the United States of America

3    that the foregoing is true and correct.

4         Executed on this 16 day of July, 2021, at San Jose, California.

5

6    _____

7    Scott Bales

8

9

10

11

12

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

## DECLARATION OF DAVID STAPLETON

I, David Stapleton, declare as follows:

1.     I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of my motion (the "Motion") for authorization to sell real property owned by 138 Balbach, LLC free and clear of liens. Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.     I was appointed as the receiver over SiliconSage Builders, LLC, and its affiliates and subsidiaries by order entered on February 10, 2021.  One of its affiliates is 138 Balbach, LLC.  138 Balbach, LLC, owns an apartment building in downtown San Jose that I am informed was completed in 2019 and that has 101 residential units, nearly all of which are rented.  Pre-receivership, 138 Balbach, LLC, retained JLL to list and market the Property and, after doing research, I decided to continue JLL's engagement and retained it as my broker to continue to list and market the Property.

3.     As described in Scott Bales' declaration, the Property was aggressively marketed and had been on the market before.  Based on these marketing efforts and my experience as a receiver as detailed in my declaration that was submitted in connection with my appointment as the Receiver, I am confident that the Purchase Agreement is the highest and best offer for this Property.  Attached hereto as Exhibit "1" is a true and correct copy of the Purchase Agreement.

4.     PFP holds the first priority lien against the Property and we have reviewed the underlying loan documents and deed of trust.  Because this is a federal equity receivership, we entered into discussions with PFP and requested that it eliminate all default interest assessed under the loan, which started a period of negotiations that resulted in the Forbearance Agreement, a true and correct copy of which is attached as Exhibit "2."  If the Property is not in escrow by August 1, 2021, and sold by October 1, 2021, then the Forbearance Agreement is of no further force or effect, essentially putting

MEMORANDUM OF
POINTS AND AUTHORITIES

the parties back to their original bargaining positions.  I believe that this is a proper exercise of my business judgment and in the best interest of the receivership estate and avoids any litigation over PFP's entitlement to default interest.

5.     A true and correct copy of the preliminary title report that we received from First American Title Company is attached as Exhibit "3."  As long as the amounts of the mechanic's lien identified in this report are consistent and accurate, I do not dispute them and intend to pay them at closing through escrow.

6.     Attached as Exhibit "4" is a true and correct copy of the Listing Agreement with JLL, which inadvertently incorrectly identifies the seller.  I am in the process of rectifying that.  I believe that the commission negotiated is fair and reasonable and has been well-earned given the amount of marketing efforts undertaken by JLL in connection with this sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16th day of July, 2021, at Solana Beach, California.

David Stapleton

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002