EXHIBIT "1"

## PURCHASE AND SALE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS

THIS PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (this "**Agreement**") is made as of June 23, 2021 (the "**Agreement Date**"), by and between David P. Stapleton, solely in his capacity as the Court-appointed receiver in the United States District Court, Northern District of California ("**Court**") action styled *SEC v. SiliconSage Builders, LLC, et al.*, Case No. 3:20-cv-09247-SI ("**Receiver**"), and Carmel Partners Realty VII, LLC, a Delaware limited liability company ("**Buyer**"), on the terms and conditions hereinafter set forth.

## RECITALS

A.      In accordance with orders entered by the Court on February 10, 2021, in the action styled *SEC v. SiliconSage Builders, LLC, et al.*, USDC, N.D. Cal. Case No. 3:20-cv-09247-SI (the "**SEC Action**"), the Receiver has been appointed as the receiver for SiliconSage Builders, LLC, aka Silicon Sage Builders, and its subsidiaries and affiliates, including but not limited to 138 Balbach LLC (collectively, the "**Receivership Entities**" or "**Entities**") and the Receiver enjoys exclusive authority and control over the Receivership Entities and their respective estates (collectively, the "**Receivership Estate**").

B.      Subject to Court approval, as detailed below, Buyer wishes to buy from Receiver and Receiver wishes to sell to Buyer, subject to the terms of this Agreement, that certain real property owned by 138 Balbach, LLC, and more particularly described on Exhibit A attached hereto  and commonly known as 138 Balbach Street, San Jose, 95110 CA, APN 264-77-001 (the "**Real Property**"), together with all buildings and improvements located thereon, any Assigned Contracts (as defined below), all rights appurtenant to the Real Property, all other rights, approvals, entitlements, privileges, easements, licenses, appurtenances, hereditaments, claims, credits, plans and specifications, drawings, certificates of occupancy, and any other intangible personal property relating to the Property (collectively, the "**Intangible Property**"), the Tenant Leases (as defined below) together with any security deposits or other tenant deposits, and personal property (if any) located at the Real Property (the "**Personal Property**"; collectively with the Real Property, the Tenant Leases and the Intangible Property, the "**Property**").

## TERMS AND CONDITIONS

In consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to all of the terms and provisions hereinafter set forth, the parties hereby agree as follows:

1.      Acquisition of the Property.  Subject to approval of the Court as provided in Section 7.1, below, and on and subject to the terms of this Agreement, Receiver hereby agrees to transfer and convey, and Buyer agrees to acquire from Receiver, the Property described herein above.  The "**Assigned Contracts**" means those leases (excluding the Tenant Leases), service and other contracts, and agreements of the Receiver or the Entities (collectively, the "**Contracts**"), in each case, which Buyer has timely elected at Buyer's sole and absolute

discretion, to have the Receiver assign to Buyer, and for Buyer to assume from the Receiver, at the Closing (as defined below), as evidenced in a written notice delivered by Buyer to the Receiver prior to the end of the Due Diligence Date.  By the Due Diligence Date, Buyer shall provide the Receiver with written notice specifically identifying any such Contracts, if any, that Buyer requests that the Receiver assign to Buyer (subject to Court approval).  If Buyer does not deliver such written notice on or before the expiration of the Due Diligence Date, then there shall be no Assigned Contracts and Buyer shall not be responsible for any Cure Costs.

2.    <u>Assumed Liabilities</u>.  Upon the Closing and subject to the terms of this Agreement, the Buyer assumes any and all liability for the following items in each case, to the extent first arising from and after the Closing:

2.1    Pursuant to the Assignment of Leases and Contracts (as defined below), all written leases and any other written occupancy, residency and tenancy agreements involving the Property existing and in full force and effect as of the Close of Escrow (as defined below) pertaining to the Property under which the Receiver or a Receivership Entity is the lessor and any rights of any occupants and tenants of the Property thereunder as of the Close of Escrow (collectively, the "**<u>Tenant Leases</u>**") and all obligations under the Tenant Leases, including, without limitation, all obligations and responsibility to return the Tenant Deposits (as defined herein) on the terms of, and when required by, the Tenant Leases and applicable law;

2.2    To the extent Buyer elects to assume any Assigned Contracts, pursuant to the Assignment of Contracts and Contracts, the Assigned Contracts and all liabilities under the Assigned Contracts;

2.3    To the extent Buyer elects to assume any Assigned Contracts, all amounts, if any, necessary to cure any defaults and/or to satisfy any actual or pecuniary losses that have resulted from such defaults under the Assigned Contracts, as determined by the Court (collectively, the "**<u>Cure Costs</u>**");

2.4    All liabilities first accruing after the Closing Date to the extent relating to or arising from events, facts or circumstances that first occur from and after the Closing due to Buyer's ownership or operation of the Property; and

2.5    All liabilities first accruing after the Closing Date under Environmental Laws, including those relating in any way to the environment or natural resources, human health and safety or Hazardous Materials, to the extent relating to or arising from events, facts or circumstances that first occur from and after the Closing due to Buyer's ownership or operation of the Property.

3.    <u>Material Dates</u>.

3.1    <u>Due Diligence Date</u>.  Buyer shall have until 5:00 p.m. Pacific on the date that is thirty (30) days after the Agreement Date, such date being herein called **"<u>Due Diligence Date</u>,"** to complete its due diligence, feasibility analysis and other investigation and evaluation of, and, in Buyer's sole and absolute discretion, approve, the Property as set forth in Section 5.6 below.

3.2     Closing Date.  The **"Closing Date"** of the transaction contemplated by this Agreement shall be the later of (i) thirty (30) days after the Due Diligence Date, and (ii) ten (10) days after entry of an order by the Court approving the purchase and sale memorialized by this Agreement, as addressed in Section 7.1 below; provided, however, in the event that the Closing has not occurred on or before the first (1st) anniversary of the Effective Date, this Agreement shall automatically terminate and the Deposit shall either be delivered by Escrow Holder to Receiver or Buyer pursuant to the express terms of this Agreement and, if applicable, the Break-up Fee shall be paid to Buyer.

If any of the foregoing dates falls on a weekend or California state or federal holiday, then such date shall be extended to the next business day.

4.     Purchase Price.  The **"Purchase Price"** to be paid by Buyer to Receiver for the Property shall be the sum of FIFTY-FOUR MILLION TWO HUNDRED THOUSAND DOLLARS ($54,200,000.00), plus, to the extent Buyer elects to assume any Assigned Contracts, any Cure Costs.  The Purchase Price shall be paid by Buyer to Receiver as follows:

4.1     Deposit.  Concurrent with the delivery of this Agreement, Buyer shall deliver to Receiver a deposit of ONE MILLION DOLLARS ($1,000,000.00), (the "**Deposit**") in readily available funds in the form of a cashier's check made out to Granite Escrow & Settlement Services ("**Escrow Holder**"), together with the instructions that (i) the Deposit shall be placed in an account to be designated by Receiver and reasonably acceptable to Buyer, and (ii) except as otherwise provided in this Agreement, the Deposit shall not be withdrawn without either Receiver's consent or order of the Court.  Upon the Close of Escrow, the Deposit, and all interest accrued thereon, if any, shall be credited to the Purchase Price.  If Buyer terminates this Agreement prior to 5:00 p.m. Pacific Time on the Due Diligence Date, or if the acquisition of the Property by the Buyer is not approved by the Court, or Buyer is otherwise entitled to a return of the Deposit in accordance with the express terms of this Agreement, then Receiver shall promptly instruct Escrow Holder to release the Deposit, with all accrued interest thereon, if any, less the fees and costs of Escrow Holder, to Buyer.  If the conditions precedent set forth in Section 8.2 are satisfied, and if Buyer thereafter fails to timely complete the acquisition of the Property in breach of this Agreement and the Close of Escrow fails to occur as a result thereof, then the Deposit, and all accrued interest thereon, if any, shall be delivered to the Receiver in accordance with Section 11.1.

4.2     Remaining Balance of the Purchase Price.  The balance of the Purchase Price in excess of the Deposit, shall be payable at least one (1) business day before the Close of Escrow, in cash by means of a confirmed wire transfer through the Federal Reserve System or cashier's check.  Buyer's estimated share of costs and Buyer's share of prorations shall be deposited with Escrow Holder by Buyer at least one (1) business day before the Close of Escrow.

4.3     Independent Consideration.  Notwithstanding anything in this Agreement to the contrary, One Hundred Dollars ($100.00) of the Deposit (the "**Independent Consideration**") shall be paid to the Receiver and considered completely nonrefundable to Buyer in all events, it being the intent of the parties to recognize that such amount has been bargained for and agreed to as independent consideration to purchase the Property  on the terms set forth herein and for Receiver's execution and delivery of this Agreement.

4.4     Buyer's Due Diligence.  If Buyer does not, in Buyer's sole and absolute discretion, deliver written notice to Receiver and Escrow Holder that Buyer is terminating this Agreement on or before 5:00 p.m. Pacific time on the Due Diligence Date, then Buyer's right to terminate this Agreement prior to the Due Diligence Date shall be waived and Buyer's obligation to purchase the Property shall be non-contingent and unconditional except only (i) for satisfaction of the conditions expressly stated in Section 8.2 below or (ii) as otherwise expressly set forth in this Agreement.   Buyer and Buyer's representatives, consultants, agents and designees may continue their respective examinations, inspections, testing, studies and investigations after the Due Diligence Date to the extent each of them deem necessary or desirable; provided, however, that the Due Diligence Date shall not be extended as a result thereof.

5.     Deliveries, Access and Due Diligence; Interim Obligations.

5.1     Status and Capacity of Receiver.  Buyer acknowledges and agrees that Receiver is acting solely in his capacity as Receiver for the Receivership Entities in accordance with the order of the Court.  The Receiver, in any capacity other than his capacity as Court-appointed receiver for the Receivership Entities, is not acting as a Receiver nor offeror of real property or any interest therein, and has no independent duty with respect to disclosure of any information concerning Receiver or the Property, under federal, California, or local law.  The Receiver shall have no obligation to investigate and/or discover matters concerning the Property or any matter related thereto.

5.2     AS-IS Sale and Purchase; Disclaimer of Representations and Warranties. Except as expressly set forth in this Agreement, the Property, including all improvements, buildings, structures, and fixtures located thereon (collectively, the "**Improvements**"), is being conveyed by Receiver AS IS, WHERE IS, WITH ALL FAULTS DEFECTS AND DEFICIENCIES (EITHER PATENT OR LATENT), WHETHER KNOWN OR UNKNOWN, WITH NO REPRESENTATIONS OR WARRANTIES OR RECOURSE OF ANY KIND. Without limitation and except as expressly set forth in this Agreement, Buyer acknowledges and agrees that Receiver has not made and Buyer specifically negates and disclaims, any representation, warranty, inducement, promise, agreement, assurance or statement, oral or written, of any kind concerning the Property, including the Improvements, including without limitation:  (i) the value or square footage of the Property, (ii) the income to be derived from the Property, (iii) the suitability of the Property for any and all activities and uses which Buyer has contemplated or may conduct, including the possibilities for future development, (iv) habitability, merchantability, marketability, profitability or fitness of the Property for a particular purpose, (v) the quality, state, condition, repair or lack of repair of the Property, (vi) the nature, quality or condition, including water, soil and geology of the Property, (vii) compliance with any laws, rules, regulations, ordinances or orders of any applicable governmental authority, (viii) the manner or quality of the construction or materials, (ix) compliance with any environmental protection, pollution, or land use laws, rules, regulations, orders or requirements, (x) the presence or absence of Hazardous Materials (defined below), (xi) the content, completeness or accuracy of the due diligence materials (whether or not provided by Receiver), or any preliminary title report, (xii) the conformity of the Improvements to any plans or specifications, (xiii) the conformity of the Property to any past, current or future

applicable zoning or building requirements or permits, (xiv) the sufficiency of any shoring or tie-backs, (xv) the sufficiency of any drainage, (xvi) the fact that all or a portion of the Property may be located on or near an earthquake fault line or in a flood zone, (xvii) the existence or non-existence of vested land use, zoning, or building entitlements for the Property, or (xviii) with respect to any other matter or thing affecting or applicable to the Property or Improvements. Without limiting the generality of the foregoing, Buyer acknowledges that Receiver is acting solely in his capacity as the Court-appointed receiver for the Receivership Entities and has no obligation to investigate or discover matters concerning the Property or Improvements. Receiver shall have no obligation to investigate or make disclosures concerning the presence or release of hazardous substances or materials on, under, within or beneath the Property under any applicable laws. Receiver shall not be deemed to own, operate or control the Property within the meaning of Sections 9601, *et seq.* of Title 42 of the United States Code or applicable federal, California or local law. Buyer acknowledges that it is knowledgeable in the financial and business risks attendant to an investment in real property similar to the Property, is capable of evaluating the merits and risks of entering into this Agreement and purchasing the Property and Improvements, and is relying solely upon and will conduct its own independent investigation, inspection and analysis of the Property and Improvements as it deems necessary or appropriate with regard to any of the foregoing matters. The Receiver shall not be deemed to own, operate or control Receiver within the meaning of 42 USC § 9601 *et seq.* or other applicable federal, California, or local law. Excluding any representation or warranty expressly set forth herein, Receiver hereby specifically disclaims: (A) all warranties implied by law arising out of or with respect to the execution of this Agreement, any aspect or element of the Property, or the performance of Receiver's obligations hereunder including, without limitation, all implied warranties of merchantability, habitability and/or fitness for a particular purpose; and (B) any warranty, guaranty or representation, oral or written, past, present or future, of, as to, or concerning (1) the nature and condition of the Property or other items conveyed hereunder, including, without limitation, the water, soil, and geology, the suitability thereof and of the Property or other items conveyed hereunder for any and all activities and uses which Buyer may elect to conduct thereon, the existence of any environmental hazards or conditions thereon (including but not limited to the presence of asbestos or other Hazardous Substances) or compliance with applicable Environmental Laws; (2) the nature and extent of any right-of-way, lease, possession, lien, encumbrance, license, reservation, condition or otherwise; and (3) the compliance of the property or other items conveyed hereunder or its operation with any governmental regulations.

Buyer's Initials: _____

     5.3    <u>Due Diligence and "AS-IS" Condition</u>. Buyer acknowledges that Buyer has conducted and will conduct its own complete and independent inspection and investigation of the Property, the physical and environmental condition of the Property and all portions thereof, and all such other matters relating to or affecting the Property, as Buyer deems necessary or appropriate, Buyer acknowledges and understands that materials made available by Receiver (if any) (collectively, the "**Property Documents**") are only for Buyer's convenience in making its own examination and determination prior to the Due Diligence Date as to whether it wishes to purchase the Property (and that Receiver makes no representations or warranties regarding the accuracy any such materials or that any such materials are complete copies of the same), and that Buyer is and shall conclusively and solely rely on Buyer's independent inspection and

Exhibit "1", Page 18

investigation in electing to proceed to purchase the Property. Buyer further agrees that in the event that it makes a successful offer that, subject to the terms of this Agreement, it shall accept the Property "AS-IS, WHERE-IS, WITH ALL FAULTS". Buyer further agrees that Receiver shall not be required to lend or provide any funds to Buyer after the Close of Escrow. The Receiver shall have no obligation to pay or satisfy any lender required repairs or cost that the Buyer requests Receiver to pay for or otherwise correct. Buyer acknowledges that, as of the Closing, Buyer has conducted and completed any requirements to obtain financing necessary to purchase the Property.

Buyer's Initials: _____

5.4  Title Report and Documents.  Within three (3) business days after the Agreement Date, Receiver shall cause First American Title Insurance Company (**"Title Company"**) to deliver to Buyer and Receiver a preliminary title report issued by the Title Company, with copies of all documents referenced in exceptions identified on Schedule B of the preliminary title report (collectively, the **"Title Report"**).

5.5  Access to Property.  Prior to the Due Diligence Date, Buyer and its agents, representatives and consultants may enter the Property as reasonably necessary to make inspections and conduct studies related to the Property.  Such entry must be after twenty-four (24) hours advance notice to Receiver, and entry must be during normal business hours. Such entry is subject to the following additional covenants and conditions:

5.5.1  Insurance.  As a condition to the right of entry set forth above, Buyer shall procure and maintain a certificate of insurance naming Receiver as an additional named insured (on a primary, non-contributing basis) evidencing commercial general liability and property damage insurance with limits of not less than TWO MILLION DOLLARS ($2,000,000.00) in the aggregate for liability coverage and not less than TWO MILLION DOLLARS ($2,000,000.00) in the aggregate for property damage.

5.5.2  Indemnity.  Buyer shall indemnify, protect, defend, and hold Receiver harmless from all claims, damages, losses, liabilities, costs and expenses, including attorneys' fees, for bodily injury, property damage or vendor liens arising out of acts or activities of Buyer or its agents, representatives and consultants on or about the Property prior to Closing; provided, however, that the foregoing indemnity shall not apply to any diminution in the value of the Property to the extent resulting from the existence of a pre-existing condition of or on the Property discovered by Buyer in the course of such entry, and further provided that the foregoing indemnity shall not apply with respect to any claims damages, costs, liabilities and losses to the extent resulting solely from Receiver's or any Entity's fraud, gross negligence or willful misconduct. This obligation shall survive Close of Escrow or any termination of this Agreement.

5.5.3  Testing.  Buyer shall not be permitted to undertake any air sampling or any intrusive or destructive testing of the Property, including, without limitation, a "Phase II" environmental assessment (collectively, the **"Intrusive Tests"**), without in each instance first obtaining Receiver's prior written consent thereto, which consent Receiver may give or withhold in Receiver's sole and absolute discretion. If Receiver fails to advise Buyer of its approval of any proposed Intrusive Tests within such two (2) business day period, such failure

2870296.1                                                                                          138 Balbach St. - PSA

-6-

shall be deemed Receiver's disapproval thereof. Buyer shall repair any damage to the Property (excluding any latent or adverse conditions discovered by Buyer) caused by or on behalf of Buyer to substantially its original condition immediately after any and all testing and inspections conducted by or on behalf of Buyer.

      5.6   <u>Buyer's Due Diligence Conditions</u>. Buyer's obligation to purchase the Property is subject to satisfaction, or waiver by Buyer, of the conditions set forth below, on or before the Due Diligence Date or such earlier dates set forth below. Buyer may waive any or all such conditions, without prejudicing or affecting any other rights Buyer may have. If this Agreement is timely terminated in accordance with Section 5.6.1. or Section 5.6.2, then the Deposit (less Escrow Holder's fee) shall be returned to Buyer.

      5.6.1   <u>Approval of Title</u>.

      (a)   Buyer shall have until ten (10) days prior to the Due Diligence Date (the **"Title Review Date"**), to give written notice to the Receiver (**"Buyer's Title Notice"**) identifying any title exceptions identified on <u>Schedule B</u> to the Title Report disapproved by Buyer (the **"Disapproved Title Exceptions"**). If Buyer fails to give such notice, Buyer shall be deemed to have approved all title exceptions.

      (b)   Within three (3) business days after receipt of Buyer's Title Notice, Receiver shall give written notice to Buyer (**"Receiver's Title Notice"**) identifying the Disapproved Title Exceptions that Receiver is able and willing to remove at or before the Close of Escrow (the **"Removable Title Exceptions"**) and any Disapproved Title Exceptions not so identified shall be considered **"Open Title Exceptions."** If Receiver fails to give Receiver's Title Notice, Receiver shall be deemed to have elected not to remove any of the Disapproved Title Exceptions (and all such Disapproved Title Exceptions shall constitute Open Title Exceptions).

      (c)   Buyer shall have until three (3) business days after Receiver elects (or is deemed to have elected) not to remove the Open Title Exceptions (the **"Title Approval Date"**) to either (i) approve the Open Title Exceptions, or (ii) terminate this Agreement, by giving written notice of such termination to Receiver and Escrow Holder within the earlier of such three (3) business days. If Buyer fails to give such notice, Buyer shall be deemed to have approved the Open Title Exceptions. Notwithstanding anything in this Agreement to the contrary, Receiver covenants to cause to be released and reconveyed from the Property, and to remove as exceptions to title prior to the Closing the following (the "**Pre-Disapproved Exceptions**"): any exceptions regarding any interests of any parties in possession (other than Tenants under the Existing Leases), mortgages, deeds of trust, or other monetary encumbrances, liens, assessments and/or indebtedness, other than those caused by Buyer, except for the current installment of non-delinquent real property taxes and assessments payable as a part of the real property tax bill. Receiver shall provide to the Title Company an owner's affidavit in form and substance reasonably satisfactory to Title Company in order to allow the Title Company to issue the Title Policy (as defined below) at Closing.

      (d)   If, after Buyer's receipt of the Title Report, the Title Company issues an amendment or supplement to the Title Report adding additional exceptions,

which were not caused by Buyer or Buyer's consultants, then Buyer shall have until the later of (i) the Title Review Date or (ii) five (5) business days after receipt of such amendment or supplement to the Title Report (and, at Buyer's election, the Closing Date shall be extended to accommodate the periods in this Section 5.6.1(d)), to give written notice to Receiver ("**Buyer's Supplemental Title Notice**") identifying any such additional title exceptions disapproved by Buyer (the "**Disapproved Supplemental Title Exceptions**").  If Buyer fails to give such notice, Buyer shall be deemed to have approved such additional title exceptions.  Within five (5) business days after receipt of Buyer's Supplemental Title Notice, Receiver shall give written notice to Buyer ("**Receiver's Supplemental Title Notice**") identifying the Disapproved Supplemental Title Exceptions that Receiver is able and willing to remove on or before the Close of Escrow (the "**Removable Supplemental Title Exceptions**") any Disapproved Title Exceptions not so identified shall be considered "**Open Supplemental Title Exceptions.**"  If Receiver fails to give Receiver's Supplemental Title Notice, Receiver shall be deemed to have elected not to remove any of the Disapproved Supplemental Title Exceptions (and such Disapproved Supplemental Title Exceptions shall constitute Open Supplemental Title Exceptions).  Buyer shall have three (3) business days after Receiver elects (or is deemed to have elected) not to remove the Open Supplemental Title Exceptions to either (A) approve the Open Supplemental Title Exceptions, or (B) terminate this Agreement, by giving written notice of such termination to Receiver and Escrow Holder within such three (3) business days.  If Buyer fails to give such notice, Buyer shall be deemed to have approved the Open Supplemental Title Exceptions.

(e)     Unless this Agreement is terminated in accordance with Sections 5.6.1.(c) or (d), then Buyer shall be deemed to have conclusively approved the condition of title to the Property at the Closing and the Title Report (as may be amended or supplemented), and  Buyer shall accept title to the Property at the Closing subject to the Permitted Exceptions (as defined below).

5.6.2   <u>Approval of Property</u>.  Buyer shall have until the Due Diligence Date to complete its due diligence, feasibility analysis and other investigations and evaluations, and approve or disapprove, in Buyer's discretion, the Property, including (i) the physical condition of the Property, including the topography, size, dimensions and boundaries of the Property; (ii) the feasibility of any improvements planned by Buyer, including the cost and availability of permits and other approvals necessary to construct such improvements and the cost of such improvements; (iii) title matters, including without limitation real property taxes and assessments, the Permitted Exceptions (defined below) and the cost and availability of any additional title insurance coverage or endorsements desired by Buyer; (iv) compliance with applicable laws, including zoning and use restrictions; (v) the cost and availability of financing; (vi) environmental matters, including without limitation the potential existence of hazardous materials on, in or near the Property; and (vii) all other matters relating to the Property.  If Buyer delivers a written notice of disapproval of the Property ("**Buyer's Termination Notice**") to Receiver on or before the Due Diligence Date, Buyer shall be deemed to have disapproved the Property, this Agreement shall automatically terminate and the Receiver will promptly instruct Escrow Holder to release the Deposit (less Escrow Holder's Fee) to Buyer pursuant to Section 4.1.  Failure to deliver Buyer's Termination Notice shall be deemed Buyer's unconditional approval of the Property as provided in Section 4.4 above.

5.7 <u>Estoppels</u>.  Receiver is not obligated to deliver to Buyer any estoppels relating to tenants on the Property.  Buyer understands the foregoing and agrees to take the Property subject to any rights of any existing tenant under any existing Tenant Leases in effect as of the Closing.

5.8 <u>Interim Obligations</u>.

5.8.1 Receiver shall continue its and the Entities' customary practices with respect to leasing and contracts affecting the Property; provided, however, that Receiver shall not, without Buyer's prior written consent, enter into any new Tenant Lease or any amendment to or modification of any existing Tenant Lease which is not terminable upon thirty (30) days' notice. Absent the written consent of the Buyer, Receiver shall not enter into or amend any contracts, or other agreements regarding the Property, or grant, create, assume or permit to be created any mortgage, lien, encumbrance, easement, or restriction upon all or any portion of the Property, in each case, that would be binding on Buyer or the Property after Closing. Buyer is not assuming any service contracts or management agreements nor shall be liable for any amounts payable thereunder before or after the Closing. The surrender or termination of any Lease or the removal of any tenant or occupant (by summary proceedings or otherwise) prior to the Closing Date shall not entitle Buyer to a reduction in, or credit or allowance against, the Purchase Price or give rise to any other claim on the part of Buyer or affect the obligations of Buyer under this Agreement. Prior to the Closing Date, Receiver shall have the right, but shall have no obligation, to enforce the rights and remedies of the landlord under any Lease by summary proceedings or otherwise, and if Receiver shall have commenced a summary proceeding against a tenant under any Tenant Lease or if a tenant shall have abandoned or vacated its premises, Receiver may apply all or any portion of any security deposit then held by Receiver under any such Tenant Lease with respect to such tenant toward any loss or damage incurred by Receiver by reason of any default by such tenant.

5.8.2 Receiver shall cause the Property, and the buildings and improvements thereon, to be maintained and insured in substantially the same manner as prior to the date of this Agreement pursuant to Receiver's and the Entities' normal course of business, subject to reasonable wear and tear.

5.8.3 With respect to any existing Tenant Leases in effect as of the Effective Date, and with respect to any renewal, extension or expansion of any Lease, whether through the exercise of an option or otherwise, occurring between such date and the Closing Date, all tenant improvement work, leasing commissions, legal fees or other expenses or grants of any free rent period or other concessions shall be paid by and be the responsibility of Receiver and the Entities.  The provisions of this Section 5.8.3 shall survive the Closing.

6. <u>Escrow, Deposits, Title Insurance and Closing</u>.

6.1 <u>Escrow</u>.  The purchase and sale transactions contemplated by this Agreement shall be accomplished through an escrow (**"<u>Escrow</u>"**) to be established with Escrow Holder.  The parties shall from time to time, promptly after request by Escrow Holder, execute any general or supplemental escrow instructions required by Escrow Holder for the purpose of implementing and carrying out the terms of this Agreement, provided such supplemental escrow

instructions are consistent with the terms of this Agreement.  Except as expressly provided in such escrow instructions, in the event of any conflict between the terms of this Agreement and such escrow instructions, this Agreement shall control.

6.2     Deposits Into Escrow.  The following documents ("**Closing Documents**") shall be deposited into Escrow one (1) business day prior to the Closing Date:

6.2.1   Receiver's Deposits Into Escrow.   Receiver shall execute and deposit into Escrow the following documents:

(a)     a grant deed (the "**Grant Deed**") for the Property in the form attached hereto as Exhibit B;

(b)     a Certificate of Non-Foreign Status in accordance with Section 1445 of the Internal Revenue Code of 1986, as amended, and the Income Tax Regulations thereunder in the form attached hereto as Exhibit C;

(c)     California Form 593 or other evidence required under California law as to whether California withholding tax is required with respect to the sale of the Property in the form attached hereto as Exhibit C;

(d)     a bill of sale (the "**Bill of Sale**") in substantially the form attached hereto as Exhibit D;

(e)     an Assignment and Assumption of Leases and Contracts (the "**Assignment of Leases**") in substantially the form attached hereto as Exhibit F;

(f)     Notices to Tenants (the "**Notice to Tenants**") in substantially the form attached hereto as Exhibit F;

(g)     To the extent in Receiver's possession, originals or copies of all Tenant Leases;

(h)     An updated and current rent roll ("**Rent Roll**") certified by Receiver as being true, correct, and complete to Receiver's actual knowledge; and

(i)     All other documents reasonably necessary or otherwise required by the Escrow Holder and Title Company to consummate the transaction contemplated by this Agreement.

6.2.2   Buyer's Deposits Into Escrow.  Buyer shall deposit into Escrow the following:

(a)     at least one (1) day prior to the Closing Date, cash in an amount sufficient to pay the Purchase Price (in excess of the Deposit) and such additional funds, if any, necessary to comply with Buyer's obligations hereunder regarding prorations, credits, costs and expenses; and

(b)  an original Assignment of Leases;

(c)  all other documents reasonably necessary or otherwise required by the Escrow Holder and Title Company to consummate the transactions contemplated by this Agreement; and

(d)  a Preliminary Change of Ownership Report duly executed by Buyer.

6.2.3  <u>Additional Instruments and Documentation</u>.  Receiver and Buyer shall each deposit any other instruments and documents that are reasonably required by Escrow Holder or otherwise required to close the escrow and consummate the purchase and sale of the Property in accordance with this Agreement.

6.3  <u>Closing</u>.  Escrow shall be deemed to have closed (**<u>"Close of Escrow"</u>** or the **"Closing"**) upon recording of the Grant Deed.  The escrow instructions shall provide for the recording of the Grant Deed and the Close of Escrow to occur on or before the Closing Date, but only when:

6.3.1  <u>Closing Costs</u>.  Escrow Holder holds funds to pay all closing costs and other amounts described in Section 6.4 below.

6.3.2  <u>Receiver's Proceeds</u>.  Escrow Holder holds for the Receiver the portion of the Purchase Price due at Close of Escrow, in immediately available funds, less Receiver's share of closing costs and plus or net of prorations for the account of Receiver.

6.3.3  <u>Closing Documents</u>.  Escrow Holder holds the Closing Documents.

6.3.4  <u>Title Insurance</u>.  Title Company has issued or is unconditionally and irrevocably committed to issue to Buyer, upon recording of the Grant Deed, a standard coverage ALTA Owner's Policy of title insurance (the **<u>"Title Policy"</u>**), with liability in the amount of the Purchase Price, showing title to the Property vested in , subject to the Permitted Exceptions (as defined below).  Buyer may elect, at its sole cost and expense, to procure an extended coverage ALTA Owner's Policy of title insurance, provided such extended coverage shall not be a condition to, nor delay, Close of Escrow.  If Buyer does not obtain an ALTA survey acceptable to Title Company, then Buyer shall be obligated to accept a customary survey exception in the Title Policy.

6.4  <u>Costs and Prorations</u>.  Unless otherwise set forth in this Agreement, income and expenses upon and after the Closing Date shall belong to Buyer and all prorations shall each be made as of 11:59 pm on the calendar day before the Closing Date.  In each such proration set forth below, the portion thereof applicable to periods beginning as of Closing shall be credited or charged to Buyer and the portion thereof applicable to periods ending as of Closing shall be credited or charged to the Receiver.  Escrow Holder shall provide a closing statement to the Receiver and Buyer reflecting the following prorations:

6.4.1    Deposits.  At Closing, Receiver shall transfer to Buyer (via a credit at Closing) all tenant security deposits (less any amounts previously applied to tenant obligations as of the Closing Date), prepaid cleaning fees, and prepaid rents held by the Receiver (collectively, the "**Tenant Deposits**");

6.4.2    Rents.  Rents actually received by the Receiver shall be prorated as of the Closing Date, *i.e.*, the Receiver shall retain all rents relating to the period prior to the Closing Date and Buyer shall be credited with all rents relating to the period on and after the Closing Date.  No proration shall be made in relation to uncollected or delinquent rents or other tenant charges existing, if any, as of the Closing Date.  With respect to any rents which are past due and not received by the Receiver on the Closing Date, if such rents are received by the Receiver after the Closing Date, the Receiver shall immediately forward to Buyer the portion of said rents relating to the period on and after the Closing Date.  If such past due rents are not received by the Receiver, Buyer shall make customary good faith efforts to attempt to recover the same from the tenant and any payments received by Buyer shall be paid by Buyer to the Receiver after first applying such amounts to any rents which are past due from and after the Closing Date.  Buyer shall provide the Receiver with a report at the end of such period in which both such efforts and the results thereof are identified.  All rentals received from such tenants subsequent to the Closing Date, shall be applied first to the rent due and payable to Buyer for any period after the Closing Date and then to rent due to the Receiver for the period prior the Closing Date.  From and after the Closing, Receiver shall have no rights to pursue any monetary claims against any tenant who is in default under any Tenant Lease prior to the Closing Date.

6.4.3    Taxes and Assessments.  Real property taxes and assessments shall be prorated as of Close of Escrow, based on twelve 30-day months.  Any pending supplemental taxes and assessments determined after Close of Escrow shall be apportioned between and paid by Buyer and Receiver outside of Escrow on the same basis. Receiver shall pay all taxes and assessments relating to the Property that are allocable to the period before the Closing Date.

6.4.4    Transfer Taxes.    Receiver shall pay the City and County documentary transfer tax.

6.4.5    Title Insurance.  Receiver shall pay the cost of the standard CLTA portion of the Title Policy, and Buyer shall pay any additional title insurance premiums for any ALTA extended coverage and endorsements to the Title Policy requested by Buyer.

6.4.6    Escrow Fee.  Buyer and Receiver shall Split escrow fees 50% and 50%.

6.4.7    Broker's Commission.  Receiver shall be solely responsible to pay any and all commissions earned by Broker(s).

6.4.8    Utilities.  Utilities, including water, sewer, electric, and gas, shall be prorated as provided in this paragraph; provided, however, that utilities paid for by tenants under the Tenant Leases shall not be prorated.  The Receiver shall be entitled to retain any utility charges collected from tenants before the Closing, and Buyer shall be entitled to retain any utility charges collected from tenants after the Closing.  Buyer shall transfer all utilities at the Property

in the Receiver's name (but not utilities in the name of tenants under the Tenant Leases) to Buyer's name as of the Closing Date, and where necessary, post deposits with the utility companies.  The Receiver shall be entitled to recover any and all deposits held by any utility company as of the Closing Date.

      6.4.9   <u>Final Adjustment After Closing</u>.  If final prorations cannot be made at Closing for any item being prorated under this Section 6.4, then Buyer and the Receiver agree to allocate such items on a fair and equitable basis as soon as invoices or bills are available, with final adjustment to be made as soon as reasonably possible after the Closing, to the effect that income and expenses are received and paid by the parties on an accrual basis with respect to their period of ownership.  Payments in connection with the final adjustment shall be due within thirty (30) days of written notice.  The Receiver shall have reasonable access to, and the right to inspect and audit, Buyer's books to confirm the final prorations.

      6.4.10  <u>Utility Deposits</u>.  Buyer shall be responsible for making any deposits required by utility companies with respect to post-Closing service.

      6.4.11  <u>Other</u>.  All other costs and charges shall be allocated between and borne by the parties in the manner consistent with this Section 6.4.

      6.5   <u>Permitted Exceptions</u>.  **<u>"Permitted Exceptions"</u>** means the following:

      6.5.1   The printed exceptions and exclusions contained in the standard coverage ALTA owner's policy form.

      6.5.2   Unpaid property taxes and assessments to the extent not due and payable as of the Close of Escrow.

      6.5.3   Any supplemental taxes and assessments that are not delinquent.

      6.5.4   Covenants, conditions, restrictions, reservations, easements, rights, rights of way and other matters appearing of record, in each case, approved (or deemed approved) by Buyer pursuant to Section 5.2 above.

      6.5.5   Any encumbrances caused by or on behalf of Buyer.

      6.5.6   All exceptions shown in the Title Report in each case, approved (or deemed approved) by Buyer pursuant to Section 5.2 above.

      6.5.7   Any liens, matters or encumbrances caused or expressly consented to by Buyer, or caused by Buyer's consultants or any of them.

      6.5.8   All existing Tenant Leases and the rights of occupants thereunder.

      6.5.9   Tenants in possession as tenants under the existing Tenant Leases.

      6.6   <u>Actions of Escrow Holder</u>.  On the Closing Date and subject to the conditions Section 6.3, Escrow Holder shall do the following:

6.6.1    Tax Filings.  The Title Company shall file the information return for the sale of the Property required by Section 6045 of the Internal Revenue Code of 1986, as amended, and the Income Tax Regulations thereunder.

6.6.2    Recording.  Escrow Holder shall cause the Grant Deed, and any other documents directed by the parties, to be recorded in the Official Records of the County Recorder's Office of San Bernardino County, and obtain conformed copies for distribution to Buyer and Receiver.

6.6.3    Disbursement of Funds.  Escrow Holder shall disburse all funds deposited with Escrow Holder as follows (and in the following order): (i) pay all closing costs to be paid through Escrow as described in Section 6.4 (including documentary transfer taxes, premium for the standard coverage Title Policy, escrow fees and recording charges); (ii) pay delinquent real property taxes and assessments from the Receiver's proceeds; (iii) after the payments chargeable to Receiver as described in (i) and (ii), disburse the balance of the Purchase Price due to Receiver at Close of Escrow in accordance with separate wiring or other payment instructions delivered to Escrow Holder by Receiver; and (iv) disburse any remaining funds to Buyer in accordance with separate wiring or other payment instructions delivered to Escrow Holder by Buyer.

6.6.4    Delivery of Documents.  Escrow Holder shall (i) direct the Title Company to issue the Title Policy to Buyer; (ii) deliver to Buyer conformed copies of the Grant Deed, originals of the other Receiver's Closing Documents and Buyer's closing statement; (iii) deliver to Receiver conformed copies of the Grant Deed, originals of the Buyer's Closing Documents and Receiver's closing statement; and (iv) make all required filings with the federal and state tax authorities.

7.    Court Approval.

7.1    Sale Motion.  The purchase and sale of the Property as provided for and contemplated by this Agreement shall be subject to Court approval, upon a timely and noticed motion (**"Sale Motion"**) by the Receiver for an order from the Court approving the contemplated purchase and sale (**"Approval Order"**).  The Approval Order shall approve the sale of the Property to Buyer on the terms and conditions set forth in this Agreement and authorize the Receiver to proceed with this transaction.  Both Buyer's and Receiver's obligations to consummate the transactions contemplated in this Agreement shall be conditioned upon the Court's entry of the Approval Order.  Buyer shall provide all information demonstrating that Buyer can provide adequate assurance of future performance under any contracts to be assumed by Buyer pursuant to this Agreement, and Buyer shall be solely responsible for providing such adequate assurance.  Buyer acknowledges that this Agreement and the transactions contemplated hereby may be subject to objections by interested parties who may request that the Court disapprove such transactions. Buyer acknowledges that the Court may continue the hearing on the Sale Motion for any reason, including, without limitation, for further evidence, and that any such continuance shall not entitle Buyer to terminate this Agreement.  If the Court denies the Receiver's request for the Approval Order at the hearing on the Sale Motion, then this transaction shall automatically terminate and Receiver and Buyer shall be relieved of any further liability or

obligation hereunder.  In the event of such automatic termination, the Deposit, and accrued interest thereon, if any, shall be returned to Buyer.

       7.2   <u>Assignment of Certain Transferred Assets</u>.  Notwithstanding any other provision of this Agreement to the contrary, this purchase shall not constitute an agreement to assign or transfer any Assigned Contract or any right or benefit arising thereunder or resulting therefrom if an attempted assignment or transfer thereof, without the consent of a third party (including any government authority), would constitute a breach or other contravention thereof or applicable law, unless the Court, as part of the Approval Order, authorizes the transfer or assignment of such Assigned Contract without such third party consent.  The obtaining of any third party consent to the transfer or assignment of the Property or any party thereof shall not be a condition to the Closing

    8.   <u>Conditions Precedent To Closing</u>.  This transaction and the parties' obligation to perform the undertakings provided in this Agreement are conditioned upon the fulfillment of each of the following conditions precedent to close of escrow:

       8.1   <u>Court Approval</u>.  Entry of the Approval Order approving this Agreement and conveyance and transfer of the Property to Buyer subject only to the Permitted Exceptions upon Buyer's payment of the Purchase Price and performance of its other obligations under this Agreement.  Neither Buyer nor Receiver shall have the power or authority to waive the condition precedent provided in this Section 8.1.

       8.2   <u>Buyer's Conditions Precedent</u>.  The conditions precedent to Buyer's obligations hereunder and to Close of Escrow (collectively, the **"<u>Buyer Contingencies</u>"**) are as follows, which Buyer Contingencies may be waived only by the Buyer.

          8.2.1   <u>Documents Delivered</u>. All of the documents required to be delivered by Receiver to Escrow pursuant to the terms and conditions hereof shall have been delivered as required herein.

          8.2.2   <u>Court Approval</u>.  The Court shall have entered the Approval Order.

          8.2.3   <u>Title Policy</u>.  Title Company shall be irrevocably committed to issue to Buyer the ALTA extended Owner's Title Policy, subject only to the Permitted Exceptions

       8.3   <u>Receiver's Conditions</u>.  The conditions precedent to Receiver's obligations hereunder and to the Close of Escrow are as follows, which conditions may be waived only by the Receiver:

          8.3.1   <u>Truth of Representations and Warranties</u>.  The truth and accuracy in all material respects of all of Buyer's representations and warranties contained in Section 9 as of the date hereof and as of the Close of Escrow.

8.3.2   Buyer's Performance.  Buyer shall have performed all of Buyer's obligations under this Agreement in all material respects, including, without limitation, delivery of the Purchase Price.

8.3.3   Court Approval.  The Court shall have entered the Approval Order.

9.   Representations and Warranties.

9.1   Buyer's Representations and Warranties.  Buyer hereby represents and warrants to Receiver as follows:

9.1.1   Buyer has all right, power and authority necessary to enter into, execute and carry out this Agreement and the transactions contemplated in this Agreement.

9.1.2   The persons signing this Agreement and all documents and instruments delivered by Buyer pursuant to this Agreement are and will be duly authorized by all appropriate corporate, company or partnership action, as the case may be.

9.1.3   Any and all financial information delivered to Receiver by or on behalf of Buyer whether prior to or after the Agreement Date, are true, correct and complete in all materials respects.

9.1.4 Buyer is duly formed, validly existing and in good standing under the laws of the state of its formation.

9.2   Receiver's Representations and Warranties.  Receiver hereby represents and warrants to Buyer as follows:

9.2.1 This Agreement is valid and binding upon Receiver, subject to bankruptcy, reorganization, and other similar laws affecting the enforcement of creditors' rights generally.

9.3   Survival.  Each of the foregoing representation and warranties in Sections 9.1 and 9.2 shall be true on the Agreement Date and to and including the Closing Date and shall survive the Close of Escrow.

10.   Release and Indemnity.

10.1   Release of Receiver.  Effective as of the Close of Escrow, Buyer, for itself and its agents, representatives, brokers employees, attorneys, independent contractors, officers, directors, shareholders and partners, and their respective heirs, personal representatives, successors and assigns, and each of them, hereby waives, releases, acquits and forever discharges Receiver and the Receivership Entities and their respective partners, members, managers, attorneys, officers, directors, employees, agents, representatives, brokers, independent contractors, and each of them, and their respective personal representatives, successors and assigns, and each of them (collectively, the **"Releasees"**) of and from any and all claims, liabilities, demands, liens, penalties, costs and expenses, including, without limitation, attorneys' fees and costs, of any kind whatsoever, at law or in equity, known or unknown, liquidated or

contingent, which Buyer has ever had or may hereafter acquire or possess arising out of or in connection with, directly or indirectly, (i) the operation of the Property, (ii) any condition or characteristic of the Property, or any part thereof or any structure or improvements therein, including, without limitation, any construction defects, (iii) the environmental, zoning, safety, land use, and financial aspects of the Property, (iv) the nature, condition, contamination or environmental state of the Property, (v) the existence, presence or release of Hazardous Substances in, on or under the Property, and/or any other matter set forth in Section 10.3 below, and (vi) any violation of the Americans with Disabilities Act of 1990, as amended (**"ADA"**) and any regulations, orders, rules, procedures or guidelines promulgated in connection with the ADA. This release includes claims of which Buyer is presently unaware or which Buyer does not presently suspect to exist in its favor which, if known by Buyer, would materially affect Buyer's release of Receiver and/or the Releasees. In connection with the general release set forth in this Section 10.1, Buyer hereby expressly waives the benefits of Section 1542 of the California Civil Code, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

OR ANY STATE OR FEDERAL STATUTE OR COMMON LAW PROVISION WHICH PROVIDES SIMILAR RIGHTS AS CALIFORNIA CIVIL CODE SECTION 1542 TO PARTIES EXECUTING RELEASES.

Buyer's Initials: _____

Buyer expressly waives and relinquishes any and all rights and benefits under any state or federal statute and/or any common law which provides rights and benefits in any way similar to those provided in California Civil Code Section 1542. Notwithstanding anything to the contrary set forth in this Agreement, the foregoing release is not intended to and does not cover (i) any claims arising from a breach of Receiver's representations or warranties which expressly are stated to survive the Closing, (ii) any other breach by Receiver of an express obligation, covenant or agreement of Receiver under this Agreement which is expressly stated to survive the Closing, or (iii) any tort claims for personal injury or property damage arising from events that occurred prior to the Closing.

10.2    Buyer's Indemnity. From and after the Closing Date, Buyer shall and does hereby agree to indemnify, defend, and hold the Releasees harmless from and against any and all losses, damages, claims, liabilities or expenses, including costs and reasonable attorney's fees, asserted against or incurred or suffered by Receiver and/or the Releasees, from time to time, arising from or in connection with any injury or damage or claim of injury or damage of any kind whatsoever, including death, to persons or property, in each case, to the extent relating to or arising from acts or omissions by Buyer first arising from and after the Closing Date, but in all events excluding all claims damages, costs, liabilities and losses to the extent resulting solely from Receiver's or any Releasee's fraud, gross negligence or willful misconduct.

2870296.1                                                           138 Balbach St. - PSA

-17-

099999\12857280v5

10.3     Definition of "Hazardous Substances."  For purposes of this Agreement, **"Hazardous Substances"** shall mean any hazardous or toxic substance, material or waste which is or becomes regulated by and local governmental authority, the State of California or the United States Government, including, without limitation any material substance which is: (i) defined as "hazardous waste," "extremely hazardous waste" or "restricted hazardous waste" under Sections 25115, 25117 or 25122.7, or as listed pursuant to Section 25140, of the California Health and Safety Code, Division 20, Chapter 6.5 including any amendments thereto; (ii) defined as a "hazardous substance" under Section 25316 of the California Health and Safety Code, Division 20, Chapter 6.8 including any amendments thereto; (iii) defined as "hazardous material," "hazardous substance" or "hazardous waste" under Section 25501, or as a "hazardous substance" under Section 25501.1, of the California Health and Safety Code, Division 20, Chapter 6.7 including any amendments thereto, or as "waste" under Section 13050 of the California Water Code; (iv) any petroleum or petroleum products; (v) asbestos in any form; (vi) any hydrocarbon substances; (vii) pcb's; (viii) transformers; (ix) formaldehyde; (x) leakage from underground storage tanks; (xi) listed under Article 9 or defined as 'hazardous" or "extremely hazardous" pursuant to Article 11 of Title 22 of the California Administrative Code, Division 4, Title 11 of the California Administrative Code, Division 4, Chapter 20 including any amendments thereto; (xii) listed as a "toxic pollutant" pursuant to Section 311 of the Federal Pollution Control Act (33 U.S.C. Section 1317) including amendments thereto; (xiii) defined as "hazardous waste" or "solid waste" pursuant to Section 1004 of the Federal Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq. (42 U.S.C. Section 6903) including any amendments thereto; or (xiv) defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986 (42 U.S.C. Section 9601) including any amendments thereto, or in the regulations adopted or judicial or administrative orders, decisions or decrees promulgated pursuant to any of the foregoing laws. The foregoing list of definitions and statutes is intended to be illustrative and not exhaustive, and such list shall be deemed to include all definitions and laws applicable to the subject matter contained herein.

10.4     Section 25359.7.  Buyer acknowledges and agrees that the sole inquiry and investigation Receiver conducted in connection with the environmental condition of the Real Property is to obtain the environmental report(s) which Receiver has previously delivered to Buyer, if any, and that, for purposes of California Health and Safety Code Section 25359.7, Receiver has acted reasonably in relying upon said inquiry and investigation, and the delivery of this Agreement constitutes written notice to Buyer under such code section.

11.     Remedies and Liquidated Damages.

11.1     **BUYER AND RECEIVER ACKNOWLEDGE THAT, IN THE EVENT OF BUYER'S DEFAULT, IT WOULD BE IMPRACTICABLE AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES WHICH RECEIVER MAY SUFFER OR INCUR IN THE EVENT THAT THE TRANSACTION CONTEMPLATED HEREIN FAILS TO CLOSE BY REASON OF BUYER'S BREACH. ACCORDINGLY, BUYER AND RECEIVER HEREBY AGREE THAT CONSIDERING ALL OF THE CIRCUMSTANCES EXISTING AT THE EXECUTION OF THIS**

AGREEMENT, INCLUDING, BUT NOT LIMITED TO, POTENTIAL FLUCTUATIONS IN THE REAL ESTATE MARKET ANTICIPATED BY RECEIVER AND HEREBY ACKNOWLEDGED BY BUYER, A REASONABLE ESTIMATE OF THE TOTAL DETRIMENT AND THAT THE TRANSACTION CONTEMPLATED HEREIN FAILS TO CLOSE BY REASON THEREOF, THAT RECEIVER WOULD SUFFER IN THE EVENT THAT BUYER DEFAULTS IS AND SHALL BE AN AMOUNT EQUAL TO THE DEPOSIT BUYER THERETOFORE DEPOSITED OR WAS THERETOFORE REQUIRED TO DEPOSIT IN ESCROW OR TO THE RECEIVER IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF SECTION 4.1 HEREOF.  EXCEPT AS OTHERWISE PROVIDED IN CLAUSE (ii) BELOW, SAID AMOUNT SHALL REPRESENT THE FULL, AGREED AND LIQUIDATED DAMAGES TO WHICH RECEIVER IS ENTITLED BY REASON OF BUYER'S BREACH AND RECEIVER HEREBY EXPRESSLY WAIVES ANY AND ALL OTHER CLAIMS TO DAMAGES OR OTHER REMEDIES (WHETHER IN LAW OR IN EQUITY) INCLUDING WITHOUT LIMITATION THE REMEDY OF SPECIFIC PERFORMANCE. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT RATHER IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO RECEIVER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, ET SEQ.  UPON BUYER'S DEFAULT AND FAILURE TO CLOSE THIS TRANSACTION RECEIVER'S ELECTION TO TERMINATE THIS AGREEMENT BY REASON THEREOF, THE ESCROW AND THIS AGREEMENT SHALL TERMINATE AND EXCEPT FOR (i) RECEIVER'S RIGHT TO COLLECT THE AMOUNT OF SUCH LIQUIDATED DAMAGES FROM BUYER AND/OR THE ESCROW HOLDER, AS THE CASE MAY BE, AND (ii) ANY PROVISIONS AND OBLIGATIONS (INCLUDING, WITHOUT LIMITATION, BUYER'S INDEMNITY OBLIGATIONS AND BUYER'S OBLIGATIONS PURSUANT TO SECTION 12.7 BELOW) UNDER THIS AGREEMENT, THE PARTIES HERETO SHALL BE RELIEVED OF ANY FURTHER LIABILITY OR OBLIGATION UNDER THIS AGREEMENT.  BY PLACING THEIR INITIALS IN THE SPACES PROVIDED BELOW, EACH PARTY SPECIFICALLY ACKNOWLEDGES AND CONFIRMS THE ACCURACY OF THE STATEMENTS SET FORTH ABOVE AND THAT THEY WERE REPRESENTED BY COUNSEL OF THEIR CHOICE WHO FULLY EXPLAINED THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION AT THE TIME OF EXECUTION OF THIS AGREEMENT.

Receiver's Initials _____        Buyer's Initials _____

    11.2   <u>Buyer's Remedies</u>. Provided that this Agreement has not terminated in accordance with its terms and Buyer is not otherwise in default hereunder, if the Closing does not occur as a result of the Receiver's material default hereunder, Buyer's sole remedy shall be to terminate this Agreement and receive reimbursement of the Deposit plus any accrued interest thereon .

138 Balbach St. - PSA

Exhibit "1", Page 32

12.    <u>General Terms and Conditions</u>.

12.1    <u>Relationship of Receiver and Buyer</u>.  Notwithstanding anything contained in this Agreement, Receiver and Buyer hereby conclusively acknowledge that the sole and exclusive status of Receiver in this transaction is as Receiver of the Receivership Entities in the SEC Action.

12.2    <u>Expenses</u>.  Each party shall pay its own expenses incident to preparation for entering into and carrying this Agreement into effect and for consummating the said transaction, except as otherwise specifically provided herein.

12.3    <u>Notices</u>.  Any notice, request, demand, instruction or other communication to be given to either party hereunder, except those required to be delivered to the Title Company, shall be in writing and delivered (i) in person, (ii) by certified mail, postage prepaid, return receipt requested, (iii) by a commercial overnight courier that guarantees next day delivery and provides a receipt, or (iv) by electronic mail that provides a written confirmation of transmission, addressed to Receiver or to the Buyer at the address noted below.  Any notice shall be deemed delivered when actually delivered if such delivery is in person, three (3) business days after deposit with the U.S. Postal Service if such delivery is by certified mail, one (1) business day after deposit with the overnight courier service if such delivery is by an overnight courier service, and one (1) business day after transmission if such delivery is by electronic mail.  Either party may by notice to the other specify a different address for notice purposes.  A copy of all notices required or permitted to be given to Receiver hereunder shall be concurrently transmitted to such party or parties at such addresses as Receiver may from time to time hereafter designate by notice to Buyer.

Notice shall be deemed to have been given upon delivery.

| Receiver | Buyer |
|---|---|
| David P. Stapleton | Carmel Partners Realty VII, LLC |
| 515 South Flower Street, Suite 3600 | c/o Carmel Partners |
| Los Angeles, CA 90071 | 1000 Sansome Street - 1st Floor |
| Fax:    (213) 236-3501 | San Francisco, CA 94111 |
| | O: 415.231.0275 |
| Email: dkieffer@stapletoninc.com | Attn: Mike Ruiz |
| | Email: mruiz@carmelpartners.com |
| With a copy to: | |
| | With a copy to: |
| Kyra E. Andrassy | |
| 3200 Park Center Drive, Suite 250 | Cox Castle & Nicholson LLP |
| Costa Mesa, CA 92627 | 2029 Century Park East, Suite 2100 |
| kandrassy@swelawfirm.com | Los Angeles, CA 90067 |
| | Attention:  Christopher D. Stark |
| | Telephone:  (310) 284-2127 |
| | Facsimile:  (310) 284-2100 |
| | Email: cstark@coxcastle.com |

12.4    <u>Binding Effect and Amendment</u>.  This Agreement contains all agreements between the parties and is a complete, exclusive, and final expression thereof within the meaning of Code of Civil Procedure Section 1856 and all successor statutes.  This Agreement may be amended only by written instrument duly executed by Receiver and Buyer.  Nothing in this Agreement express or implied is intended to confer upon any party other than Receiver and Buyer and their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided herein.

12.5    <u>Construction; Severability</u>.  This Agreement shall be interpreted in accordance with its plain meaning and not for or against the party that drafted it.  If any provision hereof is held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions of this Agreement shall nevertheless remain in full force and effect.

12.6    <u>Time of Essence and Further Assurances</u>.  Time is strictly of the essence of this Agreement and is a material term of this Agreement and of all of the terms, provisions, covenants and conditions hereof.  The parties agree that they shall timely and promptly execute and deliver any and all additional papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their respective obligations hereunder and to carry out the intent of the parties hereto provided such documents are customarily delivered in real estate transactions in the State of California and do not impose any material cost or obligation upon any party hereunder except as set forth in this Agreement.  Whenever any action must be taken (including the giving of notices) under this Agreement during a certain time period (or by a particular date) that ends or occurs on a nonbusiness day, then such period (or date) shall be extended until the next succeeding business day. As used herein, the term "business day" shall mean any day other than a Saturday, a Sunday, or a legal holiday on which national banks are not open for general business in the State of California.

12.7    <u>Legal Action – Attorney Fees</u>.  In the event any legal action is instituted to enforce the terms of this Agreement, the prevailing party in any action or proceeding between the parties shall be entitled to reasonable attorneys' fees in addition to all other relief to which it may be entitled.  This Section 12.7 shall survive the Closing or earlier termination of this Agreement.

12.8    <u>Assignment</u>.  Buyer may not assign, transfer or convey its rights and obligations under this Agreement or in the Property without the prior written consent of Receiver, and no such approved assignment shall relieve Buyer from liability under this Agreement.  Notwithstanding the foregoing, provided there is no change in the Deposit nor the Closing Date, Buyer may assign its rights under this Agreement to one or more entities that are controlled or managed by Buyer or its affiliates.  Any assignee shall assume all of Buyer's obligations hereunder and succeed to all of Buyer's rights and remedies hereunder and any assignment and assumption must be in writing and delivered to Receiver at least five (5) business days prior to the Closing Date.

12.9    <u>Governing Law</u>.  The parties hereto expressly agree that this Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the state in which the Real Property is located.

12.10   <u>Waivers</u>.   No waiver of any breach of any covenant or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision herein contained.   No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation or act.

12.11   <u>Interpretation</u>.   This Agreement is entered into in the County of Los Angeles, and shall be subject to the laws thereof.   Wherever the singular or masculine pronoun is used it shall be construed as meaning the plural, feminine, neuter or body politic, corporate, or combination of individuals where the context or the parties hereto shall require.

12.12   <u>Separate Counterparts</u>.   This Agreement may be executed in one or more separate counterparts, each of which, when so executed, shall be deemed to be an original.   Such counterparts shall together constitute and be one and the same instrument.   Each such counterpart may be delivered by facsimile or email (as a PDF or similar attachment) and any signatures which are so delivered by facsimile or email shall be deemed original signatures for all purposes.

12.13   <u>No Brokers</u>.   Buyer and Receiver each represent and warrant to each other that they dealt with no broker in connection with, nor has any broker had any part in bringing about, this transaction other than JLL Capital Markets (collectively, the "**<u>Brokers</u>**"). Receiver shall pay the brokerage commission due Brokers in accordance with the terms and conditions of a separate written agreement. Subject to the immediately prior sentence, Receiver and Buyer shall each indemnify, defend, and hold harmless the other from and against any claim of any broker or other person for any brokerage commissions, finder's fees, or other compensation in connection with this transaction if such claim is based in whole or in part by, through, or on account of, any acts of the indemnifying party or its agents, employees, or representatives and from all losses, liabilities, costs, and expenses in connection with such claim, including without limitation, reasonable attorneys' fees, court costs, and interest.

12.14   <u>Limited Liability</u>.   Notwithstanding anything to the contrary herein, Buyer on its own behalf and on behalf of its agents, members, partners, employees, representatives, officers, directors, agents, related and affiliated entities, successors and assigns (collectively, the "**<u>Buyer Parties</u>**") hereby agrees that in no event or circumstance shall the Receiver or the Releasees have any personal liability under this Agreement.   No member or manager or agent of Buyer, nor any Buyer Party shall have any personal liability, directly or indirectly, under or in connection with this Agreement or any agreement made or entered into under or pursuant to the provisions of this Agreement, or any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter, and Receiver, on behalf of itself and its successors and assigns, hereby waives any and all such personal liability.

12.15   <u>Successors and Assigns</u>.   All of the terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by and against the successors and assigns of the parties hereto.   Without limiting the foregoing, it is the intent of the parties that the Property be conveyed in a single conveyance to a single person or entity.   If more than one person or entity wishes to take title, and Receiver consents to same, then those purchasers shall take title as tenants in common.

12.16   <u>Right to Secure Back up Contracts</u>.  At any and all times prior to the close of escrow, Receiver shall have the right to continue to market the Property for sale, but shall not enter into so-called "back-up" purchase and sale agreements with another buyer or buyers until the termination of this Agreement.

12.17   <u>Eminent Domain or Casualty Damage</u>.  If, prior to Close of Escrow, any material portion of the Real Property shall be condemned or become the subject of any pending or threatened condemnation action, Receiver shall promptly notify Buyer thereof, and Buyer shall be entitled to terminate this Agreement by delivering written notice thereof to Receiver within five (5) business days after Buyer shall have been notified of such condemnation, whereupon this Agreement shall terminate, and the Deposit (less Escrow fees) shall be returned. If Buyer does not terminate this Agreement as provided herein, any condemnation award received by Receiver prior to the Closing of Escrow shall be credited against the Purchase Price and any such award received by Receiver after the Close of Escrow shall be promptly delivered to Buyer.  In the event that prior to the Close of Escrow, any non-material portion of the Real Property is subject to a taking by any public or governmental authority, Buyer shall accept the Real Property in its then condition and proceed with the consummation of the transaction contemplated by this Agreement, in which event Buyer shall be entitled to an assignment of all of Receiver's rights to any award or proceeds payable in connection with such taking.  In the event of any such non-material taking, Receiver shall not compromise, settle or adjust any claims to such award without Buyer's prior written consent.  In the event of any material damage to or destruction of the Real Property prior to the Close of Escrow, Buyer shall have the right, exercisable by giving written notice to Receiver within five (5) business days after receipt of written notice of such damage or destruction, either (i) to terminate this Agreement in which event the Deposit (less Escrow fees) and all interest accrued thereon shall be immediately returned to Buyer, and any other money or documents in Escrow shall be returned to the party depositing the same, or (ii) to accept the Real Property in its then condition and to proceed with the consummation of the transaction contemplated by this Agreement, with an abatement or reduction in the Purchase Price in the amount of the deductible for the applicable insurance coverage, and to receive an assignment of all of Receiver's rights to any insurance proceeds payable by reason of such damage or destruction, other than rental abatement/rent loss insurance attributable to the period of time prior to the Closing which shall be retained by or paid to Receiver.  If Buyer elects to proceed under clause (ii) above, Receiver shall not compromise, settle or adjust any claims to such proceeds without Buyer's prior written consent.

13.   <u>Confidentiality</u>.  Notwithstanding anything to the contrary contained elsewhere herein, Buyer hereby acknowledges that all information furnished by Receiver to Buyer or obtained by Buyer in the course of Buyer's investigation of the Property, or in any way arising from or relating to any and all studies or entries upon the Property by Buyer, its agents or representatives, shall be treated as confidential information and further, that if any such confidential information is disclosed to third parties, Receiver or other parties may suffer damages and irreparable harm.  In connection therewith, Buyer hereby expressly understands, acknowledges, covenants and agrees (i) that Buyer will not make any press release or other public disclosure concerning this transaction and Buyer will not disclose any of the contents or information contained in or obtained as a result of any Property Documents or any other studies made in connection with Buyer's investigation of the Property, in any form whatsoever

(including, but not limited to, any oral information received by Buyer during the course of Buyer's inspection of the Property), to any party other than (A) the Receiver, Receiver's employees, agents or representatives, or Buyer's agents, employees, representatives, attorneys, consultants or potential institutional lenders or investors, without the prior express written consent of Receiver (which consent shall not be unreasonably withheld), (B) in response to lawful process or subpoena or other valid or enforceable order of a court of competent jurisdiction or as otherwise required to comply with laws or as otherwise necessary to obtain the Approval Order; (C) or to Buyer's lenders and their respective directors, officers, employees, agents and consultants; and (D) to any permitted transferee or assignee of Buyer and their respective directors, officers, employees and agents; (ii) that in making any disclosure of such information as permitted hereunder, Buyer will advise said parties of the confidentiality of such information and the potential of damage to Receiver and the liability of Buyer and such other party as a result of any disclosure of such information by said party; (iii) to furnish Receiver with copies of all studies made in connection with Buyer's inspection, study or investigation of the Property within a reasonable time (not to exceed ten (10) days) of receipt of same by Buyer; and (iv) that Receiver is relying on Buyer's covenant not to disclose any of the contents or information contained in any such Property Documents or investigations to third parties (all of which is deemed to be confidential information by the provisions of this Section).  In the event this Agreement is terminated, Buyer agrees, as a covenant that survives the Closing, to return to Receiver all information, studies, and Property Documents Receiver provided to Buyer. Notwithstanding the foregoing, Buyer acknowledges and agrees that Receiver may disclose information in the Property Documents or other information about the Property to the Court in connection with seeking the Approval Order. The foregoing confidentiality obligations shall not apply to the extent that any such confidential information is a matter of public record or is provided in other sources readily available to the real estate industry other than as a result of disclosure by Buyer.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF the parties hereto have executed this Agreement on the date first above written:

RECEIVER:

_____
David P. Stapleton, solely in his capacity as the
Receiver for 138 Balbach, LLC, and the
Receivership Entities

BUYER:

CARMEL PARTNERS REALTY VII, LLC,
a Delaware limited liability company

By: _____
Name: _Dennis Markus_____
Title: __Authorized Signatory_____

AGREED AND ACCEPTED AS OF THIS
_____ DAY OF _____, 2021 by:

Granite Escrow & Settlement Services
Attn:  Cheryl Noah
439 N. Canon Drive #220
Beverly Hills, CA 90210
310-288-0110
310-807-4368 - Fax
310-307-8978 – Direct
cnoah@graniteescrow.com

By: _____

Its: _____

"Escrow Agent"

## EXHIBIT A

## LEGAL DESCRIPTION

The land referred to is situated in the County of Santa Clara, City of San Jose, State of California, and is described as follows:

LOT 1, AS SHOWN ON THAT CERTAIN MAP ENTITLED "TRACT NO. 10287", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON AUGUST 8, 2016, IN BOOK 895 OF MAPS PAGE(S) 9-12.

APN: 264-77-001

## EXHIBIT B

## GRANT DEED

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

_____

_____

_____

_____

(Above Space For Recorder's Use Only)

## GRANT DEED

DOCUMENTARY TRANSFER TAX IS $_____, COMPUTED ON THE FULL VALUE OF PROPERTY CONVEYED.
THE PROPERTY IS LOCATED IN _____, _____.  APN: _____.

City of _____
County of _____

       FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, David P. Stapleton, solely in his capacity as the Court-appointed receiver for 138 Balbach, LLC, in the United States District Court, Northern District of California action styled *SEC v. SiliconSage Builders, LLC, et al.*, Case No. 3:20-cv-09247-SI  hereby GRANTS to _____, a _____, that certain real property which is more particularly described on Exhibit "A" which is attached hereto.

       Subject to:

       1.     Nondelinquent taxes and assessments;

       2.     All other covenants, conditions, and restrictions, reservations, rights, rights of way, easements, encumbrances, liens, and title matters, in each case, of record or which an accurate survey of the property would disclose.

Dated: _____, 20__       _____,
                              David P. Stapleton

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ )
County of _____ )

On _____, before me, _____,
(insert name of notary)
Notary Public, personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____        (Seal)

## **EXHIBIT A**

## **LEGAL DESCRIPTION**

Real property in the City of San Jose, County of Santa Clara, State of California, described as follows:

LOT 1, AS SHOWN ON THAT CERTAIN MAP ENTITLED "TRACT NO. 10287", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON AUGUST 8, 2016, IN BOOK 895 OF MAPS PAGE(S) 9-12.

APN: 264-77-001

099999\12857280v5
2870296.1

## EXHIBIT C

## TRANSFEROR'S CERTIFICATION OF NON-FOREIGN STATUS

To inform _____, a _____
("**Transferee**"), that withholding of tax under Section 1445 of the Internal Revenue Code of
1986, as amended ("**Code**") will not be required upon the transfer of certain real property to the
Transferee by _____, a _____ ("**Transferor**"), the
undersigned hereby certifies the following on behalf of the Transferor:

1.      The Transferor is not a foreign corporation, foreign partnership, foreign trust, or
foreign estate (as those terms are defined in the Code and the Income Tax Regulations
promulgated thereunder);

2.      The Transferor's U.S. employer identification number is _____;

3.      The Transferor's office address _____;

4.      Transferor is not a disregarded entity as defined in § 1.1445-2(b)(2)(iii).

The Transferor understands that this Certification may be disclosed to the Internal
Revenue Service by the Transferee and that any false statement contained herein could be
punished by fine, imprisonment, or both.

Under penalty of perjury I declare that I have examined this Certification and to the best
of my knowledge and belief it is true, correct and complete, and I further declare that I have
authority to sign this document on behalf of the Transferor.

Date: _____, 20___

"TRANSFEROR"      _____,
                  a _____

                  By:_____
                     Name:_____
                     Title:_____

## EXHIBIT D

## FORM OF BILL OF SALE

BILL OF SALE

David P. Stapleton, solely in his capacity as the Court-appointed receiver for 138 Balbach, LLC, in the United States District Court, Northern District of California action styled *SEC v. SiliconSage Builders, LLC, et al.*, Case No. 3:20-cv-09247-SI ("Receiver"), in consideration of the sum of One Dollar and other good and valuable consideration to it in hand paid by _____, a _____ ("Buyer"), the receipt and sufficiency of which is hereby acknowledged, does hereby convey, assign, transfer and quitclaim unto Buyer any interest Receiver and the Entities may have in any "Personal Property" located on the real property legally described on the attached Exhibit A and the "Intangible Property" (as such capitalized terms are defined in that certain Purchase and Sale Agreement and Joint Escrow Instructions dated as of _____, 2021 by and between Receiver and Buyer).  Said conveyance, assign, transfer and quitclaim hereunder is "AS-IS, WHERE IS, AND WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY AS TO PHYSICAL CONDITION, INCLUDING ANY LATENT OR PATENT DEFECTS, QUALITY OF CONSTRUCTION, WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE OR ANY OTHER MATTER CONCERNING SAID PERSONAL PROPERTY.

TO HAVE AND TO HOLD THE SAME unto the Buyer, its successors and assigns forever.

IN WITNESS WHEREOF, the Receiver has caused this Bill of Sale to be executed and delivered on and as of _____, 2021.

SELLER:

By:_____
      David P. Stapleton

# EXHIBIT E

## FORM OF ASSIGNMENT OF LEASES AND CONTRACTS

THIS ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS (this "Assignment") is made and entered into on the _____, 2021 ("Effective Date"), by and between David P. Stapleton, solely in his capacity as the Court-appointed receiver for 138 Balbach, LLC, in the United States District Court, Northern District of California action styled *SEC v. SiliconSage Builders, LLC, et al.*, Case No. 3:20-cv-09247-SI ("Assignor"), and _____ _____ ("Assignee"), with reference to the following facts:

A.      Assignor is the lessor under those certain leases more particularly described on Exhibit "A" attached hereto and made a part hereof (herein, collectively "Leases").

B.      Assignor is a party to those certain service contracts more particularly described on Exhibit "B" attached hereto and made a part hereof (herein, collectively "Assigned Contracts").

C.      The premises leased pursuant to the Leases and subject to the Contracts are located on that certain real property described on Exhibit "C" attached hereto and made a part hereof (herein "Property").

D.      Assignor desires to assign to Assignee, as of the Effective Date all of its right, title, interest in, to and under the Leases and the Contracts, and to be released from any further obligations thereunder arising after the Effective Date, and Assignee desires to receive from Assignor such assignment and to assume each and all of the obligations of the lessor under the Leases and Property owner under Contracts, in each case, to be performed following the Effective Date.

NOW THEREFORE, in consideration of the promises and conditions contained herein, the parties hereto do hereby agree as follows:

1.      Assignment.  Assignor hereby assigns and transfers to Assignee all of its right, title and interest in and to the Leases and the Contracts, in each case, as of the Effective Date.

2.      Assumption.  Assignee hereby assumes, effective as of the Effective Date, all obligations of Assignor (i) as the lessor under the Leases to be performed under each Lease and (ii) under each Contract, in each case, to the extent any of such obligations first accrue and are applicable to periods on or after the Effective Date and agrees to be bound by and perform all of the covenants, duties and obligations to be performed by the lessor or owner thereunder to the extent any of such covenants, duties, and obligations first arise or accrue from and after the Effective Date.  Notwithstanding the foregoing, Assignee shall have no obligation, liability or responsibility for any liability, cost, expense or obligation of Assignor under the Leases and/or the Contracts, in each case, which are attributable to any period prior to the Effective Date.

3.      <u>Miscellaneous</u>.  This Assignment shall be binding on and inure to the benefit of the parties hereto and their successors and assigns.  If any dispute should arise between the parties hereto regarding the terms or subject matter of this Assignment or the enforcement or breach of such terms, then the party prevailing in such dispute, whether by out-of-court settlement or final judicial determination, shall be entitled to recover from the non-prevailing party all costs and expenses of such dispute incurred by such prevailing party, including, without limitation, reasonable attorneys' fees.  This Assignment shall be governed by and interpreted in accordance with the laws of the State of California.

IN WITNESS WHEREOF, the undersigned have executed this Assignment on the date first above written.

**"ASSIGNOR"**

**"ASSIGNEE"**

**<u>Exhibit A</u>**

**Leases**

[See attached.]

**Exhibit B**

**Assigned Contracts**

**<u>Exhibit C</u>**

**Description of Property**

2870296.1
099999\12857280v5

**EXHIBIT F**

**NOTICE TO TENANTS**

NAME OF CURRENT LANDLORD

_____, 2020

Tenant
Address
City, state zip

Re:     Change in ownership of _____ (the "Premises")

Dear _____ [name, or "Valued Tenant"]:

The undersigned hereby gives notice that as of _____, 2020 (the "Sale Date"), the Premises you lease as a Tenant, as referenced above, was sold, conveyed and transferred to _____, a _____ ("New Landlord"). _____ ("_____") is the new managing agent of the Premises, with full authority to act on behalf of New Landlord relative to management of the Premises, including (i) collection of all rent and other charges due or to become due with respect to your leased premises, and (ii) holding and applying the security deposit, if any, under your lease.

Accordingly, New Landlord has become the owner of said premises as of the Sale Date and you are therefore directed forthwith to pay all rent and other charges due or to become due with respect to your leased premises and/or your lease as follows:

_____
Attn.: _____
_____
_____
Tel: _____
Email: _____

In addition, please contact your insurance agents and modify your insurance policies to name the following as additional insured: _____ and _____, each at the address above.

       Should you have any questions concerning this Notice, please contact _____, at _____.

Very truly yours,

"New Landlord"

_____


_____

_____, its _____