# EXHIBIT "4"

# EXCLUSIVE SALE LISTING AGREEMENT

This Agreement ("Agreement") is made by and between JLL ("Broker") and 180 Balbach LLC ("Seller"), acting by and through Federally Court Appointed Receiver David P. Stapleton ("Receiver"), solely in his capacity as Receiver appointed in Northern District Court of California Case No. 3:20-cv-09247-SI.

1. **Broker as Exclusive Selling Agent.** Seller hereby grants to Broker the exclusive right to sell the real properties commonly and legally described on **Exhibit A**, attached hereto ("the "**Property**") with all improvements now or hereafter made on or to the Properties. Seller agrees to promptly disclose to Broker any personal property to be included in the sale. Seller authorizes Broker to insert or correct the legal description over Seller's signature. The term (the "**Term**") of this **Agreement shall commence on the** date the court approves this fully executed Agreement ("**Effective Date**") Mar. 17, 2021 and continuing through midnight on the date that is six (6) months from the Effective Date, or such earlier date on which this Agreement is terminated pursuant to the terms hereof (the "**Termination Date**"). Broker shall use its best efforts to sell the Properties during the Term.

2. **Term of Sale.** The Broker will set list prices as shown in the table below and will pursue the highest and best offering prices, which shall be payable, at the option of the Purchaser (defined below), in cash or cash and assumption of any existing assumable loan, if applicable. Any offer to purchase the Properties may contain normal and customary contingencies such as the Purchaser's approval of a preliminary title report, survey, feasibility studies and existing leases.   The sale will be as-is, where-is and with no representations or warranties. The sale will be subject to overbid.

|    | Property Address | APN | ~~List Price~~ Marketed unpriced |
|----|------------------|-----|------------|
| 1. | 138 Balbach St. San Jose, CA 95110 | 264-77-001 | Target sale range $50 Million to $60 million |

3. **Negotiations and Cooperation.** All inquiries and offers which Seller receives shall be referred to Broker and all negotiations shall be conducted solely by Broker or under its direction. Seller shall cooperate fully with Broker and shall provide Broker access to the Properties at all reasonable times.  Broker shall promptly inform Seller of all inquiries from or on behalf of prospective Purchasers and shall respond on Seller's behalf by email, letter, telephone call or, when possible, personal contact.  Broker will immediately submit to Seller all written or verbal offers to purchase the Properties received by Broker and will promptly notify Seller of any pending offers to purchase the Properties of which Broker may be aware. Notwithstanding the foregoing, Seller may negotiate directly with any potential Purchaser without Broker's assistance or participation, but any such direct negotiation shall not reduce Broker's right to a commission hereunder.

4. **Advertising.** Unless expressly agreed otherwise in writing, commencing on the Effective Date, Broker is authorized to advertise the Properties, subject to Seller's approval. Industry standard single-page advertising flyers prepared by Broker shall be paid for by Broker. Broker shall have the right to place signs advertising the Properties for sale on the Properties

Exhibit "4", Page 72

at Broker' expense. Any non-industry standard marketing material must be approved by Seller and paid for by the Broker.

5. **Cooperation With Other Brokers.** Seller understands and agrees that Broker may solicit the cooperation of other real estate brokers and, regardless of whether the cooperating broker is the broker of the Purchaser, the Seller, neither or both, Broker may share any commissions that are received by Broker under the terms of the Agreement.

6. **Extension.** If, during the Term of this Agreement, an escrow is opened or negotiations involving the sale, transfer or conveyance of the Properties have commenced and are continuing, then, except as set forth in <u>Section 16</u> below, the Term of this Agreement shall be extended through the closing of such escrow, the termination of such negotiations, or the consummation of such transaction.

7. **Commissions.** Subject to the approval of the U.S. District Court, Seller agrees to pay a commission to Broker equal to a fixed amount of $400,000 plus 2% of every dollar over $50MM, but not to exceed $200,000. Broker's maximum commission is not to exceed $600,000. Seller agrees to pay said commission pursuant to the payment provision set forth in <u>Section 8</u> of this Agreement. Seller shall pay commission to Broker if a purchaser (together with its permitted successors and assigns, a "**Purchaser**"), enters into a purchase and sale contract for the Properties, as agreed to by Seller in its sole discretion (a "**Contract**") with Owner and the sale of the Properties is closed and consummated in accordance with such Contract prior to the Termination Date. The commission contemplated in this <u>Section 7</u> will be payable only from the sales proceeds received by Seller. Notwithstanding anything to the contrary contained herein, no commission will be earned, due or payable hereunder: (a) in connection with a sale to Broker or any affiliate of Broker; (b) if a Contract is terminated pursuant to a right granted therein or by the mutual agreement of Seller and Purchaser; or (c) the proposed sale fails to close for any reason, including the default of either Seller or Purchaser under the applicable Contract or the failure of the court to approve the sale of the Properties.

8. **Payment of Commissions.** Any commission due pursuant to <u>Section 7</u> shall be payable only upon the closing of a sale or exchange of the Properties as set forth in <u>Section 7</u>. Broker is authorized to provide a copy of this Agreement to any escrow or closing agent working on such transaction, and such escrow or closing agent is hereby irrevocably instructed by Seller to pay Broker's commissions from any such funds or proceeds available.

9. **Broker's Authority.** Broker may not enter into any agreement with any prospective purchaser, real estate broker or any other person in the name of, on behalf of or otherwise binding on Seller, nor may Broker subject Seller to any other obligations or liabilities, and Broker shall not represent that it has any authority to do so. Broker shall make no representations or warranties, express or implied, as to the condition of the Properties or about improvements on the Properties, or their suitability or fitness for the purposes intended by any Purchaser. Broker acknowledges and agrees that Seller is selling the Properties "as is, where is, with all faults" and Broker shall so advise each and every prospective purchaser. Broker must also advise such prospective Purchasers to conduct their own independent evaluation of the Properties. Broker may not accept earnest money from any prospective Purchaser. If earnest money paid or pledged by a prospective Purchaser is forfeited by that Purchaser, Broker may not claim any portion of such forfeited earnest money. Broker acknowledges and agrees that no agreement or terms negotiated by Broker

Exhibit "4", Page 73

with any prospective Purchaser will bind Seller unless and until incorporated into a written Contract executed and delivered by the Purchaser and Seller and approved by the court. This Agreement supersedes and controls terms for any commission or fee provided in any Contract.

10. **Agency/Dual Agency.** Seller authorizes Broker to appoint _____ of _____ to act as Seller's Listing Agent(s). It is understood and agreed that this Agreement creates an agency relationship with Listing Agent(s) and Broker only, not with any other salespersons of Broker; provided, Seller authorizes Broker to appoint other salespersons affiliated with Broker as subagents to act on Seller's behalf as and when needed, at Broker' discretion. Any broker or salesperson other than Listing Agent(s) will not be representing Seller and may represent the Purchaser. Accordingly, for purposes of this Agreement, "Broker" means Listing Agent(s), including any subagents, and Listing Agent's Broker, Designated Broker or Branch Manager, unless expressly stated otherwise.

Seller agrees that if the Properties are sold to a Purchaser represented by one of Broker's salespersons other than Listing Agent(s), then Seller consents to Broker acting as a dual agent. Seller further agrees that if the Properties are sold to a purchaser who Listing Agent also represents, then Seller consents to Listing Agent(s) and Broker acting as dual agents. Seller understands and agrees that different salespersons affiliated with Broker may represent different sellers in competing transactions involving the same buyer. Seller hereby consents to such representation and agrees that it shall not be considered action by Broker that is adverse or detrimental to the interest of either seller, nor shall it be considered a conflict of interest on the part of Broker. If Broker acts as a dual agent, then Broker shall be entitled to the entire commission payable under this Agreement plus any additional compensation Broker may have negotiated with the Purchaser. Acceptance of referral fees between salespersons affiliated with Broker will not be considered action that is adverse or detrimental on the part of the salespersons or Broker, nor shall it be considered a conflict of interest by the salespersons or Broker.

11. **Brokerage Services Only.** It is expressly acknowledged that this Agreement is for Broker's real estate brokerage services only, and the Broker's other service lines, including without limitation, assets services, project management, and appraisal, are not a part of the scope of this Agreement.

12. **Compliance with Laws; Indemnification.** In performing its obligations under this Agreement, Broker will comply with all applicable laws and subscribe to the highest ethical and business standards of the real estate practice. Broker shall indemnify and hold harmless the Seller and its affiliates and their respective officers, directors, employees, agents, and representatives (collectively, the **"Seller Indemnified Parties"**) from and against all demands, liabilities, damages, costs, expenses and causes of action arising as a result of the acts and omissions of Broker, or as a result of the acts or omissions of Broker's agents, servants, or employees in acting as Seller's agent.

13. **No Discrimination.** Seller hereby acknowledges that it is illegal to refuse to display, sell or lease the Properties to any person because of race, color, religion, national origin, sex, marital status, or physical disability.

14. **Seller's Warranty.** Seller warrants that Seller has full authority to execute this Agreement, and to sell the Properties, in each case subject to court approval. The person(s) executing this

Exhibit "4", Page 74

Agreement on behalf of Seller warrant(s) that such person(s) have full authority to do so and in so doing to bind Seller.

Seller confirms that following the full execution of this Agreement, the amount of the purchase price and any other terms of the sale of the Properties set forth in this Agreement shall not be deemed confidential information and Seller authorizes disclosure of the same.

15. **Broker's Representations, Covenant and Warranties.** Broker hereby makes the following representations, warranties, and covenants to Seller, all of which shall survive the execution and delivery of this Agreement.

   i. Broker is duly organized, is validly existing, is in good standing under the laws of the state of its formation or incorporation, and in each state in which it is currently doing business, and has complied with all applicable laws in order to conduct business in such states related to the services under this Agreement. Broker covenants to use its best efforts to comply with all applicable laws in order to conduct business in the state or states where the Properties are located. Broker has all power and authority required to execute, deliver, and perform this Agreement. Broker has sufficient staff and other resources to carry out Broker's duties hereunder in a prompt, efficient, and diligent manner.

   ii. The execution, delivery, and performance of this Agreement have been duly authorized by all necessary action on the part of Broker.

   iii. This Agreement constitutes a legal, valid, and binding agreement of Broker, enforceable against Broker in accordance with its terms, except as limited by bankruptcy, insolvency, receivership, and similar laws from time to time in effect; and

   iv. Broker has obtained and will maintain in good standing during the Term all licenses and permits necessary to legally and validly execute, deliver and perform this Agreement.

16. **Termination.** Seller and Broker agree that any legal event or other unforeseen occurrence that requires (a) Seller to surrender its authority as Receiver, or (b) the sale process, in Seller's reasonable discretion, to be stopped, shall immediately terminate this agreement in its entirety, including, without limitation, <u>Section 7</u> of this Agreement.

17. **Negotiation and Construction.** This Agreement and each of the terms and provisions hereof have been negotiated between the parties, and the language in all parts of this Agreement shall, in all cases, be construed according to its fair meaning and not strictly for or against either party.

18. Jurisdiction. The U.S. District Court will have exclusive jurisdiction to resolve any dispute under this Agreement.

19. **Entire Agreement.** This Agreement sets forth the entirety of the agreement between the parties regarding sale of the Properties.

20. **Counterparts.** This Agreement may be executed in a number of counterparts and evidenced by facsimile, PDF format or similarly-imaged signatures, each of which will be deemed an original and all of which, when taken together, will constitute one and the same Agreement.

[Remainder of page intentionally left blank. Signatures follow on separate sheet.]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

**SELLER: 180 Balbach LLC**

By

Name:     David P. Stapleton

Title:     Receiver

Address:     515 South Flower St, 36ᵗʰ Floor

Los Angeles, CA 90071

Date:     3/17/2021

Telephone:     (213) 235-0600

**BROKER:**

By

Name:     Lab Hirschy

Title:     Senior Managing Director

Address:     One Front St, Suite 2100

SF, CA 94111

Date:     3/15/21

Telephone:     415-395-4948

Exhibit "4", Page 76

**EXHIBIT A**
**Legal Description**

Real Property in the City of San Jose, County of Santa Clara, State of California, escribed as follows:

LOT 1, AS SHOWN ON THAT CERTAIN MAP ENTITLED "TRACT NO. 10287", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON AUGUST 8, 2016, IN BOOK 895 OF MAPS PAGE(S) 9-12.

ASSESSORS PARCEL NUMBER: 264-77-001
COMMONLY KNOWN AS: 138 Balbach Street, San Jose, California 95110

2860629.1                          Exhibit A                    138 Balbach - Listing Agreement