**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
Timothy W. Evanston, State Bar No. 319342
*tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:     714 445-1000
Facsimile:     714 445-1002

Counsel for David Stapleton, Receiver

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        v.<br><br>SILICONSAGE BUILDERS, LLC aka SILICON SAGE BUILDERS and SANJEEV ACHARYA,<br><br>                    Defendants. | Case No. 3:20-cv-09247-SI<br><br>**SECOND INTERIM FEE APPLICATION OF DAVID STAPLETON, RECEIVER, FOR THE PERIOD FROM APRIL 1, 2021 THROUGH JUNE 30, 2021; DECLARATION OF DAVID STAPLETON IN SUPPORT THEREOF**<br><br>Hearing Information:<br>DATE:  October 1, 2021<br>TIME:  10:00 a.m.<br>CTRM:  1 – 17th Floor (hearing via Zoom)<br>Judge:  Susan Illston |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................1

II.     GENERAL SUMMARY.......................................................................................1

III.    OVERVIEW OF THE RECEIVERSHIP CASE ................................................2

IV.     SERVICES RENDERED DURING THE APPLICATION PERIOD...................3

      A.      Asset Identification and Recovery .........................................................3

      B.      Asset Disposition....................................................................................3

      C.      Accounting and Financial Matters .........................................................4

      D.      General Administrative Matters .............................................................4

      E.      Forensic Strategy & Analysis.................................................................4

      F.      Employee Benefits and Payroll Administration......................................5

      G.      Case Management ...................................................................................5

      H.      Communication With Investors ..............................................................6

      I.       Reporting.................................................................................................6

      J.       Tax Issues ...............................................................................................7

      K.      Almaden ..................................................................................................7

      L.      Balbach ...................................................................................................9

      M.      Hayward ..................................................................................................9

      N.      Mathilda 2 ...............................................................................................9

      O.      Monroe/Madison Place ...........................................................................9

      P.      Osgood ..................................................................................................10

V.      THE COURT HAS THE AUTHORITY AND DISCRETION TO APPROVE THE
      REQUESTED INTERIM FEES AND EXPENSES. ........................................11

VI.     CONCLUSION .................................................................................................12

## I.     **INTRODUCTION**

David P. Stapleton, the permanent receiver (the "Receiver") appointed by the Court pursuant to the *Order on Plaintiff Securities and Exchange Commission's Motion for Appoint of Receiver* (the "Receivership Order") that was entered on February 10, 2021, hereby submits his Second Interim Application for Payment of Fees and Reimbursement of Expenses (the "Application") as required by the Receivership Order. This Application is the second interim application for allowance and reimbursement of fees and expenses submitted by the Receiver and covers the period from April 1, 2021 to June 30, 2021 (the "Application Period").

By this Application, the Receiver requests that the Court approve his fees and expenses in the amounts of $641,953.50 and $1,415.13 respectively.  Of the $641,953.50 in fees, $345,891.50 of this amount is attributable to the day-to-day management of two ongoing construction projects which are currently being funded through protective advances being made by the construction lender, as set forth in greater detail below.  The Receiver seeks approval to pay 100% of the fees attributable to the construction management from the protective advances so that the fees are not borne by the receivership estate in general but are instead borne by the projects to which they are attributable.  The balance of the fees totals $296,062.00, and with respect to those fees, the Receiver requests that the Court  authorize payment, on an interim basis, of 80% of his fees, or $236,849.60, and 100% of his expenses, or $1,415.13, from available funds.

The Receiver is informed that the SEC has no objection to the relief sought.

## II.     **GENERAL SUMMARY**

During the Application Period, the Receiver incurred fees in the amount of $641,953.50, and expenses in the amount of $1,415.13.  As detailed herein, the Receiver and his staff spent approximately 2,184 hours working on behalf of the Receivership Entities, at an average hourly billing rate of $293.92. The vast majority of these fees and time – 1198.2 hours for a total of $345,891.50 in fees[1] – is attributable to two time-intensive, mid-stream construction projects, the

---

[1] Almaden total hours were 549.50 and total fees were $157,657.50; Osgood total hours were 648.70 and total fees were $188,234.00

Almaden and Osgood projects, for which the Receiver has taken over as owner's representative and led the primary construction management responsibilities. The Receiver's tasks related to the Almaden and Osgood projects are discussed in further detail below and, subject to the approval of the Court, the lender for these two projects is funding the payment of these fees, which is to say that if the Court approves this arrangement, these costs will not be paid directly from the recoveries of the Receivership Estate, which minimizes the exposure of the Receivership Estate. The Receiver's fees and average hourly billing rate represent significant savings to the Receivership Estate due in substantial part to the discount the Receiver has applied to all time on this matter and the efficient utilization of his team's expertise and experience in forensic accounting, complex real estate development and operational issues and asset disposition efforts.

As noted above, by this Application, the Receiver seeks interim approval of 100% of his fees of $641,953.50 and expenses of $1,415.13.  With respect to the $345,891.50 in fees attributable to Osgood and Almaden, the Receiver seeks authorization to pay 100% of that amount from funds that have already been advanced by the lender for this purpose.  With respect to the balance of $296,062.00 in fees and $1,415.13 in costs, the Receiver seeks authorization to pay and payment, on an interim basis from available funds,[2] of 80% of his fees, or $236,849.60, and 100% of his expenses, or $1,415.13.

Should the Court grant the Application and authorize the interim payments requested herein as funds become available, the remaining holdbacks shall be subject to review and payment in connection with the Receiver's final application for payment of fees and reimbursement of expenses, to be submitted at the end of the receivership.

## III.   <u>OVERVIEW OF THE RECEIVERSHIP CASE</u>

As set forth in the *Second Quarterly Report of the Receiver* filed by the Receiver concurrently with this Application, the Receiver's efforts in the Application Period were focused

---

[2] As of the filing of this Application, the Receiver's balance of cash on hand, exclusive of funding of ongoing construction costs for the Almaden and Osgood projects, is $447,273. The source of this cash is primarily related to proceeds from the sale of the Hayward property and does not take into account accrued A/P, including the fees and costs for the Receiver and Receiver's counsel approved in the First Interim Fee Applications.

SECOND APPLICATION FOR PAYMENT OF
FEES AND REIMBURSEMENT OF
EXPENSES

-2-

on further assessing the status of the various projects, engaging brokerage teams to list the properties for sale, marketing the properties, negotiating contracts for the sale of certain projects, negotiating and finalizing terms with lenders and other lienholders and managing the construction projects related to the Almaden and Osgood projects. The Receiver also furthered his review of determining the inflows and outflows of funds into, out of, and between the Receivership Entities. A summary of the Receiver's time by category and the Receiver's invoices are attached as Exhibit 1. The Standardized Fund and Accounting Report required by the SEC is attached as Exhibit 2.

## IV.  SERVICES RENDERED DURING THE APPLICATION PERIOD

During the Application Period, the fees and expenses incurred by the Receiver totaled $641,953.50 and $1,415.13, respectively. The services performed by the Receiver during the Application Period are described below, and in more detail in the Receiver's invoices, which are attached hereto as Exhibit 1.

### A.  Asset Identification and Recovery

[47.4 Hours; Total Fees $15,802.50]

During the Application Period, the Receiver's team spent time finalizing its initial due diligence and valuation for each property or project, including an analysis of the current equity and debt for each property or project. The Receiver also oversaw management of and assembly and review and property titles, and the Receiver and his team analyzed title reports and identified liens associated with each property, identified lenders, and quantified outstanding debt to prepare an estimate of equity in each property and determine viability of recovery for the Receivership Estate. The Receiver and his team continue to communicate with lenders and other lien holders to negotiate best resolution for the Receivership Estate. During the Application Period, the Receiver listed all properties for sale and the Receiver's efforts began to shift towards asset sale efforts, which are captured under the *Asset Disposition & Recovery* category summarized below.

### B.  Asset Disposition

[101.4 Hours; Total Fees $33,069.50]

During the Application Period, the Receiver and his team interviewed and hired real estate brokers to lead the marketing and sale efforts for all properties other than Almaden and Osgood, efforts related to which are described separately in this Application. The Receiver managed marketing strategies and communicated with brokers regarding updates on a periodic basis throughout the Application Period. The Receiver assessed offers and reviewed current debt and other factors to make decisions about the feasibility of pursuing sales with the goal of maximizing recoveries for the Receivership Estate.  Where a project starts to require more time and effort to evaluate or to market and sell, the Receiver has created separate billing categories for those projects in order to accurately track the time incurred specific to that asset.

## C.    Accounting and Financial Matters

[93.3 Hours; Total Fees $19,252.50]

During the Application Period, the Receiver deposited (limited) receipts and processed (limited) disbursements and recorded all activity for the Receivership Estate. The Receiver's accounting team has continued to work with the operations team and third parties to understand income and receipts and track the accounting activity for the Receivership Estate.

## D.    General Administrative Matters

[36.3 Hours; Total Fees $6,920.50]

The Receiver's staff recorded general administrative tasks relevant to other categories of work in this category. During the Application Period, reviewed notices received in the mail, answered inquiries from miscellaneous vendors regarding issues involving the Receivership Entities, processed paperwork involving pre-receivership bank accounts, located files on the former SiliconSage server, processed court filings and posted updates to the receivership website.

## E.    Forensic Strategy & Analysis

[234.7 Hours; Total Fees $77,320.00]

The Receiver and his staff continued to devote significant time to the Forensic Analysis, including review of bank records, historical financial statements and cash flow, accounting data, investor documentation, subscription agreements and other records. The Receiver's staff continues to analyze sources and uses of cash and underlying documentation related to the sources, uses, and

distributions made to investors and management and reviewed the capital structure related to the various projects. The Receiver has also aggregated, analyzed, and assessed the reliability of the financial records belonging to Silicon Sage Builders and other Receivership Entities involving 77 bank accounts which capture more than 130,000 transactions. The Receiver also analyzed and calculated the amount of benefit received by S. Acharya from the Receivership Entities that may be subject to disgorgement, and identifying potential claims to recover profits received by investors and other avoidable transfers.

**F.     Employee Benefits and Payroll Administration**

[24.50 Hours; Total Fees $7,310.50]

During the Application Period, the Receiver spent time fielding concerns from employees regarding unpaid and past-due payroll, the status of W-2s for 2020 and other issues related to 401k benefits and claims submitted to the Department of Labor ("DOL"). Additionally, the Receiver's staff responded to informal inquires and formal subpoenas from the DOL, the Internal Revenue Services ("IRS"), the Employee Benefits Security Administration ("EBSA") and the Assistant United States Attorney ("AUSA") and provided documentation associated with SiliconSage payroll. The Receiver's team has also begun to review the process for winding down and rolling over employee 401k accounts and has submitted a request in the Receiver's concurrently filed *Second Quarterly Report* authorizing Stapleton Group to serve as the independent fiduciary to wind-down the 401k plan.

**G.     Case Management**

[133.90 Hours; Total Fees $42,932.50]

During the Application Period, the Receiver and his staff attended to a wide array of general items associated with managing the Receivership Estate. During the Application period, the Receiver and his team reviewed filings in Defendant Acharya's bankruptcy case to stay abreast of overlapping issues, worked to resolve IT issues and to obtain bank activity from Chase Bank where SiliconSage had banked prior to the receivership, communicated with vendors and lienholders to resolve inquiries from these parties related to pending contracts and leased equipment, managed responses and/or production of documents related to third-party inquiries and

communicated with various parties regarding open items and next steps regarding resolution to open items and procedural components related to the same.

## H. Communication With Investors

[24.40 Hours; Total Fees $7,490.00]

During the Application Period, the Receiver has continued to keep the pool of more than 250 investors, many of which have been seeking updates from the Receiver, informed of his progress in administering the Receivership Entities and the Estate and responding to inquiries regarding individual investments, timing and status. During the Application Period, the Receiver continued to respond to inquiries from investors who requested general information regarding the nature and status of the receivership, including the claims submissions process; the status of sale and construction of the Properties; updates related to pending sales; updates related to court filings; the status of forensic accounting efforts to determine how net proceeds from the property sales will be distributed and the timeline for a resolution and distribution to investors, among other issues. The Receiver continued to manage the receivership website to provide case updates to the investors and monitored the website's message portal.

## I. Reporting

[29.30 Hours; Total Fees $8,677.50]

During the Application Period, the Receiver and his staff devoted attention to the preparation and review of the Receiver's *First Quarterly Report & Recovery Plan*, as well as all attendant supporting documents. Additionally, the Receiver and his staff assisted in the preparation of other documents filed in this Court, including the following:

- Notice of Motion and Motion of Receiver for Order in Aid of Administration of the Receivership Estate

- First Quarterly Report and Recovery Plan

- First Interim Fee Application of Receiver

- Notice of Motion and Motion of Receiver for Order Approving Sale of Real Property Owned by 138 Balbach, LLC

1    • Notice of Motion and Motion of Receiver for Order Approving Sale of Real

2       Property Owned by 1460 Monroe, LLC

3

4    **J.     Tax Issues**

5    [.50 Hours; Total Fees $162.50]

6    During the Application Period, the Receiver and his staff reviewed tax returns and

7    conferred with tax professionals.

8    **K.     Almaden**

9    [549.50 Hours; Total Fees $157,657.50]

10   During the Application Period, the Receiver and his staff continued to  analyze the current

11   state of the Almaden project in order to complete the construction budget and also continued to

12   work with the construction manager, Suffolk Construction, to proceed with construction and move

13   the project forward.  During this period, the Receiver's team reviewed the construction budget he

14   was provided with to verify that it was accurate as compared to the actual status of the project.

15   The Receiver determined that there were significant unknowns in the existing budget and that

16   many of the contracts did not include all of the work that would be necessary.  The Receiver

17   worked with Suffolk to get bids for the additional required work and then incorporated these into

18   an updated budget.  The Receiver has been very involved with problem solving various issues

19   ranging from relationships with subcontractors to determining how to fix design issues. The

20   Receiver has also managed the RFP process to make sure that Suffolk gets multiple competitive

21   bids for all of the work required, and helped to realize cost savings by making the decision to not

22   use union labor contractors.  The Receiver's team managed the budget and cost-to-complete

23   forecast, and have set up accounting books and records to track all payments made in conjunction

24   with the completion of the projects.  The Receiver and his team have also implemented an

25   accounts payable procedure that includes the necessary controls for approving and ensuring that

26   all invoices are properly funded within the budget, including obtaining the conditional and

27   unconditional lien releases from the various subcontractors working on the project.

28

Throughout this process, the Receiver has worked closely with Acres Capital, which is the construction lender on the project.  The Receiver and Acres reached agreement on a reduced interest rate for the protective advances and the amounts already loaned, but held off on documenting that arrangement until the construction budget was complete.  The Receiver and Acres are now having these discussions again in light of the realization that the cost to complete both this project and the Osgood project are significantly higher than originally anticipated.  The Receiver's goal is to ensure that the Receivership Estate realizes a benefit from the administration of the Almaden Project.

In order to gauge the efforts and costs incurred by the Receiver in connection with this project, the Receiver reviewed monthly pre-receivership payroll costs related to this project and determined that the Receiver's fees for the two months with the most extensive workload to-date are commensurate with the monthly payroll costs. For the four weeks ended February 23, 2020 (capturing January 27, 2020 through February 23, 2020) during a period where the project was in full-swing, the payroll costs related to the Almaden project are estimated to have been $60,852. The average monthly (slightly more than four weeks) for the two months of May and June 2021, the months consuming the most significant amount of the Receiver's time and effort to-date, the average monthly amount was $62,134.[3]  As set forth above, much of the Receiver's efforts are related to remedying construction issues, understanding and projecting the correlated budget impacts, and correcting the course of significant mismanagement of the project in general prior to the Receiver's appointment.

The Receiver is seeking approval for the fees and costs that he has incurred in connection with the day-to-day management of this project to be paid from the protective advances being made by Acres Capital, which is supportive of this request.  This will help ensure that the fees and costs associated with this project are borne by the project that they benefit as opposed to by the Receivership Estate as a whole.

---

[3]   The Receiver's fees for the month of April 2021 were significantly less than those for the months of May and June 2021. If the Receiver's fees for the month of April 2021 were included in these averages, the average monthly amount would come down significantly below that of the payroll for the Receivership Entities for the comparable period.

SECOND APPLICATION FOR PAYMENT OF
FEES AND REIMBURSEMENT OF
EXPENSES

2881453.1

**L.    Balbach**

[147.60 Hours; Total Fees $43,137.50]

During the Application Period, the Receiver and his staff reviewed the financial condition of Balbach and managed various details surrounding inspections and final permits to obtain the final Certificate of Occupancy for this project. The Receiver negotiated with the secured lender and finalized a plan to make monthly debt service payments from the cash flow of the project to allow for some time to market and sell this property. The Receiver simultaneously marketed the property, held a best-and-final round, and negotiated a purchase and sale contract with the buyer with the highest and best offer[4].

**M.    Hayward**

[33.80 Hours; Total Fees $9,774.0 ]

During the Application Period, the Receiver and his staff worked with escrow to resolve outstanding liens related to this property, obtained court approval to sell the property, communicated with the buyer and their broker regarding the delayed closing, and ultimately closed the sale.

**N.    Mathilda 2**

[53.5 Hours; Total Fees $15,812.50]

During the Application Period, the Receiver continued to market this property for sale, accepted an offer, coordinated with the buyer to complete its due diligence, negotiated with the senior lienholder to obtain a favorable interest rate to maximize the recovery for the receivership estate, and obtained the agreement of the holders of the junior liens to release their liens against this property without receiving anything from the sale of this property. The Receiver has also prepared a sale motion to seek approval of the sale of this property.

**O.    Monroe/Madison Place**

[25.30 Hours; Total Fees $8,400.00]

---

[4]    Shortly after this Application Period, the Receiver submitted a motion to approve the sale of the Balbach property, which was approved by this Court. The Receiver is in the process of closing the sale of this property.

SECOND APPLICATION FOR PAYMENT OF
FEES AND REIMBURSEMENT OF
EXPENSES

1    During the Application Period, the Receiver finalized his marketing efforts, including a best-
2  and-final round, to solicit the highest and best offers for this asset. The Receiver selected three
3  separate buyers for the three ground-floor commercial units at this property, signed contracts with
4  buyers and submitted a motion to the Court for approval of these sales.  The Receiver also negotiated
5  with the secured creditors to reach a sharing agreement to allow the Estate to share in the gross
6  proceeds from these sales and maximize recovery for the Receivership Estate.

7    **P.    Osgood**

8    [648.70 Hours; Total Fees $188,234.00]

9    This project is similarly situated to the Almaden project.  During the Application Period,
10  the Receiver and his staff reviewed the underwriting of the property to understand all completion
11  costs, principal and interest due to determine the feasibility of completing the project and the
12  timeline for doing so.  The Receiver also continued to work with the construction manager,
13  Suffolk Construction, to proceed with construction and move the project forward.  During this
14  period, the Receiver's team reviewed the construction budget the Receiver was provided with to
15  verify that it was accurate as compared to the actual status of the project.  The Receiver
16  determined that there were significant unknowns in the existing budget and that many of the
17  contracts did not include all of the work that would be necessary.  The Receiver worked with
18  Suffolk to get bids for the additional required work and then incorporated these into an updated
19  budget.  As with Almaden, the Receiver has been very involved with problem solving various
20  issues ranging from relationships with subcontractors to determining how to fix design issues.
21  The Receiver has also been involved with making sure that Suffolk gets multiple competitive bids
22  for all of the work required, and helped to realize cost savings by making the decision to not use
23  union labor contractors.  The Receiver's team managed the budget and cost-to-complete forecast,
24  and have set up accounting books and records to track all payments made in conjunction with the
25  completion of the projects.  The Receiver and his team have also implemented an accounts
26  payable procedure that includes the necessary controls for approving and ensuring that all invoices
27  are properly funded within the budget, including obtaining the conditional and unconditional lien
28  releases from the various subcontractors working on the project.

Now that the budget is nearly complete, the Receiver is in the process of negotiating with Acres Capital in order to obtain favorable terms that will result in the greatest recovery possible for the Receivership Estate. To gauge the amount of fees incurred by the Receiver in connection with the day-to-day construction of this project, the Receiver reviewed monthly pre-receivership payroll costs related to this project and has determined that the Receiver's fees for the two months with the most extensive workload to-date are commensurate with the monthly payroll costs. For the four weeks ended February 23, 2020 (capturing January 27, 2020 through February 23, 2020) during a period where the project was in full-swing, the payroll costs related to the Almaden project are estimated to have been $78,862. The average monthly (slightly more than four weeks) for the two months of May and June 2021, the months consuming the most significant amount of the Receiver's time and effort to-date, the average monthly amount was $75,378.[5] As set forth above, much of the Receiver's efforts are related to remedying construction issues, understanding, and projecting the correlated budget impacts, and correcting the course of significant mismanagement of the project in general prior to the Receiver's appointment.

As with the Almaden project, the Receiver is seeking approval for the fees and costs that he has incurred in connection with the day-to-day management of this project to be paid from the protective advances being made by Acres Capital, which is supportive of this request. This will help ensure that the fees and costs associated with this project are borne by the project that they benefit as opposed to by the Receivership Estate as a whole.

# V.    THE COURT HAS THE AUTHORITY AND DISCRETION TO APPROVE THE REQUESTED INTERIM FEES AND EXPENSES.

Decisions regarding the timing and amount of an award of fees and expenses to the Receiver and his Professionals are committed to the sound discretion of the Court. *See SEC v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 1992) (rev'd in part on other grounds, 998 F.2d 922 (11th

---

[5]  The Receiver's fees for the month of April 2021 were significantly less than those for the months of May and June 2021. If the Receiver's fees for the month of April 2021 were included in these averages, the average monthly amount would come down significantly below that of the payroll for the Receivership Entities for the comparable period.

Cir. 1993)).  In determining the reasonableness of fees and expenses requested in this context, the Court should consider the time records presented, the quality of the work performed, the complexity of the problems faced, and the benefit of the services rendered to the Estate, along with the Commission's position on the request, which is entitled to "great weight."  *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973).

Where, as here, the fees requested are reasonable and "where both the magnitude and the protracted nature of a case impose economic hardships on professionals rendering services to the estate[,]" an interim award of fees is appropriate.  *Consumer Fin. Prot. Bureau v. Pension Funding, LLC,* 2016 U.S. Dist. LEXIS 187607, at *4 (C.D. Cal. July 7, 2016).  Interim allowances are necessary "to relieve counsel and others from the burden of financing lengthy and complex proceedings." *In re Rose Way, Inc.*, 1990 Bankr. LEXIS 3028, at *9 (Bankr. S.D. Iowa Mar. 1, 1990) (citing *In re Mansfield Tire & Rubber Co.*, 19 B.R. 125 (Bankr. N.D. Ohio 1981)).

Here, the Receiver is providing valuable work to the receivership with the goal of returning as much as possible to investors and creditors.  The Receiver's billing rates are comparable to those charged in the community on similarly complex receivership matters.  Further, the billing statements of the Receiver have been submitted to the SEC for review prior to the filing of this Application, without objection.

## VI.   CONCLUSION

The Receiver therefore respectfully requests that this Court enter an Order:

1.      Approving the Receiver's fees and expenses for the Application Period totaling $641,940.50 and $1,145.13, respectively, on an interim basis;

2.      Authorizing the Receiver to pay 100% of the $345,891.50 in fees incurred in connection with the Osgood and Almaden project from protective advances made by Acres Capital;

3.      Authorizing the Receiver to pay 80% of the balance of $296,062.00 in fees, which is $236,849.60, and 100% of his expenses, or $1,145.13, from assets of the Receivership Entities as they become available; and

SECOND APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES

-12-

2881453.1

1

2

3

4          4.        For such other and further relief as is appropriate.

5

6    DATED:  August 27, 2021                    Respectfully submitted,

7                                                SMILEY WANG-EKVALL, LLP

8

9                                                By:      /s/ Kyra E. Andrassy
                                                       _____
10                                                       KYRA E. ANDRASSY
                                                        Attorneys for David Stapleton, Receiver
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                             SECOND APPLICATION FOR PAYMENT OF
                                                              FEES AND REIMBURSEMENT OF
                                                                       EXPENSES

## DECLARATION OF DAVID STAPLETON

I, David Stapleton, declare as follows:

1.      I am the Receiver appointed by the Court over SiliconSage Builders, LLC, and its affiliates and subsidiaries. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the *Second Interim Fee Application of the Receiver* (the "Application"). Unless otherwise defined in this declaration, all terms defined in the Application are incorporated herein by this reference.

2.      In the ordinary course of its business, both my firm and I keep a record of all time expended by our professionals and para-professionals in the rendering of professional services on a computerized billing system as follows:  At or near the time the professional services are rendered, we record (a) the description of the nature of the services performed, (b) the duration of the time expended, and (c) the client/matter name or number by either: (1) writing such information on a time sheet, or (2) inputting such information directly into the firm's computer billing system. The firm's computer billing system keeps a record of all time spent on a client/matter, the professional providing the services and a description of the services rendered. The firm's computer billing system automatically multiplies the time expended by each professional by the respective professional's billing rate to calculate the amount of the fee. The firm conducts its business in reliance on the accuracy of such business records.

3.      I have reviewed our bill for services rendered in connection with this case, true and correct copies of which are attached hereto as Exhibit "1."

4.      It is our normal practice to allocate work and assignments in an efficient manner to achieve an effective result. As demonstrated in the Application, I believe that this practice has been followed in this case.

5.      At any time a reimbursable charge is incurred on behalf of a client, such as photocopy expenses, postage charges, and the like, we keep a written record of the file number for which the charges were expended and a brief description of the nature of the expense. These

1  records are also transcribed into the computer which, together with the records of time spent

2  providing professional services, are transcribed onto monthly bills. The expenses are billed at the

3  actual cost.

4        6.     Attached hereto as Exhibit "2" is the Receiver's Schedule of Cash Receipts and

5  Disbursements for the period from April 1, 2021, through June 30, 2021.

6        7.     I have reviewed the Application. To the best of my knowledge, information and

7  belief, the facts set forth in the Application are true and correct.

8        I declare under penalty of perjury under the laws of the United States of America that the

9  foregoing is true and correct.

10        Executed on this 26th day of August 2021, at Solana Beach, California.

11

12  _____
        David Stapleton

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND APPLICATION FOR PAYMENT OF
FEES AND REIMBURSEMENT OF
EXPENSES

-15-

2881453.1