**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
kandrassy@swelawfirm.com
Sharon Oh-Kubisch, State Bar No. 197573
sokubisch@swelawfirm.com
Timothy W. Evanston, State Bar No. 319342
tevanston@swelawfirm.com
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:  714 445-1000
Facsimile:   714 445-1002

Counsel for David Stapleton, Receiver

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>    v.<br><br>SILICONSAGE BUILDERS, LLC aka SILICON SAGE BUILDERS and SANJEEV ACHARYA,<br><br>              Defendants. | Case No. 3:20-cv-09247-SI<br><br>**OMNIBUS OPPOSITION TO:**<br><br>**(A) MOTION FOR ORDER: (1) COMPELLING ARBITRATION; AND (2) FINDING THAT THE RECEIVER LACKS STANDING TO ACT ON BEHALF OF ACRES CAPITAL TO RECHARACTERIZE OR INVALIDATE THE PURCHASE AND SALE AGREEMENT WITH MARWAN NABOULSI AND RANA NABOULSI; AND**<br><br>**(B) MOTION TO DISMISS RECEIVER'S AMENDED STATEMENT OF POSITION REGARDING RECHARACTERIZATION**<br><br>**Hearing Information:**<br>Date:   May 27, 2022<br>Time:   10:00 a.m.<br>Crtrm.: 1 – 17th Floor (hearing via Zoom)<br>Judge:  Susan Illston |

**TO THE HONORABLE SUSAN ILLSTON, SENIOR DISTRICT JUDGE AND ALL PARTIES IN INTEREST:**

David Stapleton, the receiver ("Receiver") for SiliconSage Builders, LLC, and its affiliates and subsidiaries (together, "SiliconSage"), submits his opposition to the motions to dismiss the *Amended Statement of Position of the Receiver Regarding Recharacterization or Invalidation of the Purchase and Sale Agreements with Anantha Srirama, Ravi Jagannathan, Marwan Naboulsi and Rana Naboulsi, Sangeeth Peruri, and Sayang, LLC* (the "Amended Statement") and to compel arbitration that were filed by Marwan and Rana Naboulsi and Anantha Srirama and joined by Sangeeth Peruri.

## I.  OVERVIEW OF THE DISPUTES

In resolving the dispute over the characterization of the purchase agreements referenced in the Amended Statement, it is important to recognize that there is no scenario under which the alleged purchasers will ultimately acquire the units that are the subject of the disputed agreements.

If the Receiver pursues recharacterization and prevails, then the sums advanced by each purchaser would be characterized as loans and the purchasers would have unsecured claims against the receivership estate for the amounts that they loaned. The units at issue would then be freed up for sale to third party purchasers at fair market value in accordance with the procedures previously approved by the Court.

On the other hand, if the Receiver pursues recharacterization and does not prevail, then the purchase agreements would retain their characterization as purchase agreements. However, because their terms are contrary to the terms permitted under the loan agreement with Acres Loan Origination, and they are junior to Acres' senior liens, the Court has already ordered that Acres has the authority to foreclose against those units, and Acres only needs to go through the mechanics of obtaining a Court order formally activating that portion of the Court's order. The purchasers' remedy may then be to seek recovery of the amounts paid under the agreement from the bonding company

that issued the bond that permitted the escrow company to release the amounts paid under the agreement prior to the closing.  The purchaser would also have a claim against the receivership estate for the amount that it is not able to recover and, to the extent that the bonding company does pay out claims, it presumably will have unsecured claims against the receivership estate pursuant to the terms of its indemnification agreement.

      Because the disputed purchase agreements violated the terms of the loan agreement, Acres has always had the right to foreclose out the purchase agreements.  Accordingly, pursuant to this Court's order approving the Construction Funding Agreement with Acres that was entered on January 21, 2022 (the "Construction Funding Order"), the Court has already granted Acres relief from the stay contained in the order appointing the Receiver to exercise its state law remedies, subject only to its agreement to forbear pursuant to the terms of the Construction Funding Agreement and the Construction Funding Order.  Acres was agreeable to having the Receiver first seek to recharacterize the agreements using the summary procedure that the Receiver proposed and that the parties then represented by counsel agreed upon, because it was more efficient not to disrupt the completion of the projects by a foreclosure.

      Unfortunately, the recharacterization procedure has been turned into a more complex proceeding even if the use of summary proceedings is ultimately approved.  Therefore, given the Construction Funding Order governing the sale of the units and the disposition of the proceeds, the Receiver agrees with counsel for Anantha Srirama that rejection is the path of least resistance for all involved and intends to file a motion to reject the purchase agreements in the next week.  Assuming the Court approves the rejection, then the purchasers would have a lien against the property that is junior to the liens of Acres. The priority of the lien vis-à-vis the junior lienholders is likely to be a disputed issue that does not need to be resolved on either project unless and until Acres is paid in full.  That will not be known for some time.  For each project, if there are funds left over after the estate receives its $200,000 and Acres' liens are satisfied, then the Receiver will agree to hold the net proceeds pending further Court order.

In the interest of judicial economy and efficiency, the Receiver suggests that the Court continue the hearing on the motions to dismiss to be heard concurrently with the rejection motion. Out of an abundance of caution and in the event that the Court does not authorize the Receiver to reject these agreements, the Receiver addresses the issues raised in the motions to dismiss.[1]

## II. The Court Has Subject Matter Jurisdiction

As set forth in the Amended Statement, these disputes originate out of a civil enforcement action brought by the SEC. Federal securities laws provide that there is "exclusive federal jurisdiction over 'all suits in equity and actions at law brought to enforce any liability or duty created by' federal securities laws." *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008)(citing 15 U.S.C. §§ 77v(a), 78aa). The defendants have consented to the entry of judgment against them, with only the issue of the amount of the disgorgement and civil penalty remaining to be determined.

In connection with the civil enforcement action, the Court ordered the appointment of the Receiver, vesting the Receiver with the powers and duties to determine the nature and value of all property interests of the entities under receivership, to take action necessary to preserve receivership property, and to bring legal actions based in law or equity in any state, federal, or foreign court as the Receiver deems necessary. *See Order on Plaintiff Securities and Exchange Commission's Appointment of Receiver* [Doc. No. 63] (the "Receivership Order"), at 5-6. The Receivership Order further provided that "the Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise and/or adjust actions in any state,

---

[1] The Receiver incorporates by reference his Amended Statement, which contains a brief history of the disputes and how the present summary procedure was developed. The Receiver also advises the Court that the issues regarding the purchase agreement with Sayang, LLC, have been resolved, with Sayang terminating the agreement and receiving a refund of the deposit that remained with the escrow company.

federal, or foreign court or proceeding of any kind as may be in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property." *Id.* at 14. As set forth in 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."

In the receivership context, federal courts have consistently held that a court has subject matter jurisdiction over any action brought by the receiver in the fulfillment of his duties. As stated by the Supreme Court in an opinion dating back to 1899:

> When an action or suit is commenced by a receiver, appointed by a circuit court, to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary so far as the jurisdiction of the circuit court as a court of the United States is concerned; and we have repeatedly held that jurisdiction of these subordinate actions or suits is to be attributed to the jurisdiction on which the main suit rested . . . .

*Pope v. Louisville, N.A. & C.*, 173 U.S. 273, 578 (1899). As long as the action is brought by the receiver in fulfillment of his duties, the district court has ancillary jurisdiction. *See Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008)(holding that the district court can exercise supplemental jurisdiction in receivership cases even where there would otherwise be no basis for federal jurisdiction and affirming the finding of ancillary jurisdiction in a fraudulent transfer action brought under California law); *Haile v. Henderson Nat. Bank*, 657 F.2d 816, 822 (6th Cir. 1981)(holding that the court had jurisdiction over a turnover action brought by a receiver against a bank because "any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit."); *U.S. v. Franklin Nat'l Bank*, 512 F.2d 245, 249 (2d Cir. 1975)(holding that an action brought by a receiver in a different district court than the one that appointed him required an independent basis for jurisdiction but that the receiver could have sued in the appointing district, noting that "[t]his rule is well settled, and the reasons for it are clear. The ancillary suit is cognizable in the court of the main suit

regardless of the citizenship of the parties or the amount of controversy because the res over which the receiver took control is already before the court.").

The cases cited by Srirama are not relevant because they do not involve receivers serving pursuant to appointment orders and under the supervision of the district court. The *Kokkonen* case cited was an appeal taken from an order that enforced a settlement agreement entered into between an insurance agent and an insurance company. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). The *Peacock* case involved an action between a former employee and an officer of their former employee seeking to hold that officer liable for a judgment. *See Peacock v. Thomas*, 516 U.S. 349, 352-53 (1996).

Here, the actions seek to adjudicate the parties' respective rights to contracts involving real property that belongs to the receivership estate. The outcome of this dispute has a direct impact on the amount available to pay off the secured claims against that property and whether there will be any excess proceeds available for unsecured creditors from these two projects. Because the Receiver is exercising his duties in furtherance of the goal of effectuating the Court's judgment against SiliconSage Builders and Mr. Acharya, this Court has supplemental jurisdiction over the recharacterization disputes.

In support of his argument that the Court should decline to exercise this supplemental jurisdiction, Srirama argues that the receivership estate will receive no benefit from the recharacterization litigation. However, that is still an unknown. The Receiver has been candid with the Court that based on the construction budgets, the existing valid purchase agreements, and projected future sales, it is likely that the projects are both overencumbered. However, that is not a certainty because if construction costs are lower than anticipated or sales are higher than expected, there could be an additional recovery for the estate from either or both projects. It simply is too early to tell and at present, the receivership estate has the potential, however remote, to receive additional funds. Even if it did not, however, the dispute involves property of the

receivership estate, contracts entered into by receivership entities, and impacts the recovery of a secured creditor of the receivership estate. These grounds are sufficient for the Court to exercise its discretion to retain jurisdiction.

### III. The Court Has Personal Jurisdiction and Srirama Has Been Properly Served

The only party who has complained that the Court does not have personal jurisdiction over him is Mr. Srirama, because the Receiver has not personally served him with the Amended Statement, instead serving his counsel.[2] This issue is related to whether this action may proceed as a summary proceeding rather than by way of a complaint and answer, so the Receiver will address that issue first.

Summary proceedings are used in receivership cases to promote judicial efficiency and to reduce litigation costs and the district court has wide latitude to implement procedures that give the parties fair notice and a reasonable opportunity to respond. *See SEC v. Hardy*, 803 F.2d 1034, 1040 (9th Cir. 1986)(and cases cited therein). Here, the procedures being used were jointly proposed by counsel to the Receiver, Peruri, and the Naboulsis. Srirama was notified by email and engaged by email with counsel for the Receiver, but did not yet have counsel retained. The procedures were proposed with the intention that all parties would be afforded notice of the basis for the Receiver's claims, have an opportunity to raise defenses, and conduct discovery over a period of several months. The Receiver was initially required to file "statements" of his position, which were called statements rather than motions because the Court did not want to automatically trigger the setting of dates in the docket, which would occur if it were filed as a motion. The Receiver offered to include evidence, but it was instead agreed that the initial position papers would omit evidence, which would

---

[2] Counsel states that he is "specially appearing." However, in light of the implementation of Federal Rule of Civil Procedure 12, special appearances to challenge jurisdiction are no longer required in federal courts. *See Republic Intern. Corp v. Amco Engineers, Inc.*, 516 F.2d 161, 165 (9th Cir. 1975).

1 instead be submitted after discovery was conducted.  By the time that the Receiver was
2 preparing his initial statements, Srirama had retained counsel.  Accordingly, the Receiver
3 served the initial statements by ECF notice or, in the case of counsel for Srirama, by mail.
4 This is consistent with Federal Rule of Civil Procedure 5(b)(1) and Local Civil Rule 5(g).

5     If the Receiver had proceeded by way of a complaint and summons, then Federal
6 Rule of Civil Procedure 4 would have governed and each of the responding parties would
7 have been required to be served in accordance with that rule.  But with the consent of the
8 counsel then engaged, the Receiver instead proceeded by way of a summary proceeding
9 that was designed to afford the parties due process with a reasonable opportunity to
10 conduct discovery and the opportunity to present their evidence and arguments to the
11 Court.  The Receiver believes that this process is and was appropriate, although it has
12 not turned out to not be as efficient as the Receiver had hoped.

13     Because this is a summary proceeding, the parties have been appropriately
14 served.

### IV. The Receiver Has Standing to Recharacterize the Agreements

17     In general, receivers have standing to bring any action that could have been
18 brought by one of the receivership entities.  *See Donell*, 533 F.3d at 776-77.  In *Donell*,
19 the Court affirmed the district court's determination that the receiver had standing to
20 pursue state law fraudulent transfer actions because the receiver was suing to redress
21 injuries to the corporation caused by the former principal.  *Id; see also Smith v. Arthur*
22 *Andersen LLP*, 421 F.3d 989, 1002-03 (9th Cir. 2005)(holding that the focus of the inquiry
23 into whether a bankruptcy trustee has standing is whether the trustee is seeking to
24 redress injuries to the debtor itself); *Janvey v. Democratic Senatorial Campaign*
25 *Committee, Inc.*, 712 F.3d 185, 191-92 (5th Cir. 2013)(holding that a receiver can sue for
26 injuries to the entity in receivership).

27     Here, and as summarized above, the Court vested the Receiver with the power
28 and duty to take action necessary to determine the value of all property interests of the

Receivership Entities and to bring legal actions that the Receiver deems "necessary or appropriate in discharging his duties as Receiver." *Receivership Order* at 5-6.  The Court directed the Receiver to investigate and prosecute actions of any kind that may be "advisable or property to recover and/or conserve Receivership Property." *Id.* at 14.  The Receivership Order also enjoins all parties with notice from interfering with the Receiver's performance of his duties and from taking any action to "modify, cancel, terminate, call, extinguish, revoke, or accelerate . . . any . . . other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property." *Receivership Order* at 12.

       The Almaden and Osgood projects are property of the receivership estate.  If the purchase agreements are recharacterized, then this frees up the units under contract for sale by the Receiver at fair market value to third parties.  Therefore, the outcome of the dispute has a correlation to the amount that will be realized from the sale of the condominium units and that will be available to pay creditors.  The purchase agreements at issue caused injury to Osgood and Almaden because they either sold units for under market prices, which would deprive Osgood or Almaden of the fair market value of the units, or because Osgood and Almaden would not receive fair value because investors were permitted to roll over investments from different entities and given credit towards the purchase price by Osgood or Almaden without Osgood or Almaden receiving fair value.  In addition, the agreements triggered defaults under the loan agreement with Acres.  The Receiver is seeking to redress these injuries.  The recharacterization of these agreements is necessary to free up these units for sale at fair market value, which will increase the gross proceeds.  Depending on the costs of construction and the amount of sales revenues generated, it is possible that the receivership estate may still yield a benefit in addition to the $200,000 per project it is guaranteed.  Thus, there is potential benefit for the investors.

       Acres may also have standing to bring these claims because they impact the amount that will be available to satisfy its liens. The bond company that may have

exposure if they are treated as purchase agreements may also have standing.  However, the fact that other parties may have standing does not mean that the Receiver does not have standing.  For the reasons set forth above, he does.

## V.     THE RECEIVER'S POSITION REGARDING ARBITRATION PROVISIONS

The purchase agreements that the Receiver seeks to recharacterize as loans contain an arbitration provision that provides that claims or disputes between the buyer and seller arising out of the purchase agreements or in any way related to the property being purchased are to be determined by submission to binding arbitration.  Three of the four purchasers are seeking to enforce the arbitration provision; Ravi Jagannathan is not.

The Federal Arbitration Act provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In the Ninth Circuit and in the context of bankruptcy cases, which are analogous to receiverships, arbitration provisions have not been enforced where doing so would contravene the Bankruptcy Code's purpose of "'[c]entralization of disputes concerning a debtor's legal obligations' and 'protecti[ing[ creditors and reorganizing debtors from piecemeal litigation.'"  *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir. 2012)(quoting *Phillips v. Congelton, LLC (In re White Mountain Mining Co.)*, 403 F.3d 164 (4th Cir. 2005))(alternations in original).  In *Thorpe*, the Ninth Circuit affirmed the bankruptcy court's refusal to compel arbitration of a claim for breach of a settlement agreement entered into pre-bankruptcy between the debtor and an insurance company on the basis that the debtor's conduct during the case violated the terms of that agreement.  The Ninth Circuit agreed that only the bankruptcy court should determine whether the debtor's conduct in the bankruptcy case should give rise to a claim for breach of contract.  *Id.* at 1022.  The Ninth Circuit went on to note that even apart from that basis, the policy of centralization of disputes in a bankruptcy case and expedited resolution in the bankruptcy court formed a separate basis for not enforcing the arbitration provision.  *Id.*at 1023-24;

*see also Kirkland v. Rund (In re EPD Investment Co.)*, 821 F.3d 1146, 1150 (9th Cir. 2016)(declining to compel arbitration of fraudulent conveyance, subordination, and claim disallowance because of the policy of centralization of disputes); *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123 (9th Cir. 2012)(declining to enforce an arbitration provision in a contract where the creditor sought to arbitrate breach of contract, breach of fiduciary duty, and fraud claims because, although those were state court issues, the outcome impacted whether the debt would be dischargeable and therefore, allowing arbitration would conflict with the purposes of the Bankruptcy Code, including centralization of disputes and protection from piecemeal litigation).  Although, as Srirama notes, there are cases from other circuits in the receivership context that have enforced arbitration agreements, these decisions are not binding on this Court.

        Federal courts have long been exercised their powers of general equity jurisdiction to appoint receivers over assets in litigation. *See, e.g.*, *Cent. Tr. Co. of N.Y. v. E. Tenn. V. & G. Ry. Co.*, 59 F. 523, 523–24 (C.C. 6th (D. Ky.) 1894) (citing *Booth v. Clark*, 58 U.S. 322, 331, 15 L. Ed. 164 (1854)); *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 895 (5th Cir. 2019) ("Equity receiverships are older than this country."). Early cases recognized the rule, still in effect today, that a receiver is "an officer of the court . . . appointed [on] behalf of all parties . . . who may establish rights in the cause," and that the property in the receiver's hands – the modern-day receivership estate – "is *in custodia legis* for whoever can make out a title to it." *Booth*, 58 U.S. at 331; *see also Gulf Ref. Co. of La. v. Vincent Oil Co.*, 185 F. 87, 90 (5th Cir. 1911). A component of the receivership estate has always included the causes of action available to, or inherited by, the receiver who "takes all the property and choses in action of the corporation, and may lawfully enforce the collection of the latter by suits and legal proceedings." *Wyman v. Bowman*, 127 F. 257, 265 (8th Cir. 1904).

        First promulgated in 1937, and essentially unchanged since a substantial revision in 1946, Federal Rule of Civil Procedure 66 governs the appointment of receivers by federal courts. Rule 66 states:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

The Ninth Circuit has recognized "that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.' . . . The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Ninth Circuit has also held that a central purpose of equity receiverships "is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Id.* at 1038 (citations omitted). This is exemplified by the supplemental jurisdiction a district court may exercise over a broad range of claims brought by receivers in the fulfillment of the duties imposed upon them by the appointment order.

Here, the policy of centralization of disputes and efficiency in administration would be furthered by this Court retaining jurisdiction. The disputes involve receivership property and would not be brought absent the receivership, because the purpose of them is to increase the value of the Osgood and Almaden projects, which are receivership assets. The facts that give rise to the Receiver's recharacterization arguments involve conduct by the defendant in this case, Sanjeev Acharya, and his attempts to raise money to keep his house of cards from falling, which is what led to the filing of the SEC's civil enforcement action. The other parties to the purchase agreements being challenged are investors, a lender, and in at least one case, relatives of a key employee of the Receivership Entities. This Court is well-suited to resolve these disputes in an efficient manner through the use of summary proceedings, and timely resolution of these disputes is important because the units at issue cannot be administered until these disputes are resolved, and construction is projected to be completed this year. Moreover, one party has not sought to enforce the arbitration provision in his agreement, opening the door for

these proceedings to be tried in separate forums with separate rules, which is both inefficient and could lead to inconsistent outcomes.  Last, it the Court orders arbitration, then Acres will likely seek to foreclose because its agreement to forbear from seeking to exercise its state law remedies is dependent upon a the Receiver obtaining a **judicial** determination that the agreements are unenforceable agreements for the purchase of real property, and an arbitration ruling is not a judicial determination.[3]

In addition, the Receiver is not bringing this action directly on behalf of Osgood or Almaden but is instead bringing it in his capacity as Receiver to seek redress for damages caused by Mr. Acharya to Osgood and Almaden as a result of these purchase agreements.  Absent the appointment of the Receiver, Osgood and Almaden could not have sought recharacterization because they were be barred from doing so by the doctrine of in pari delicto.  The Receiver does not have that constraint.  *See Donell*, 533 F.3d at 777.  The Receiver believes that this distinction is an important one because arbitration provisions can typically not be enforced against nonsignatories.  *See Janvey v. Alguire*, 847 F.3d 231, 240-242 (5th Cir. 2017)(holding that a receiver bringing an action on behalf of a nonsignatory to an arbitration agreement was not bound by that agreement).  In this capacity, the Receiver submits that he should not be bound by the arbitration provisions because he was not a party to these agreements.

For these reasons, the Receiver believes that the motions to compel arbitration should be denied.

---

[3] Section 2.4 of the Construction Funding Agreement provides:

> If the Receiver is unable to obtain a judicial determination that all of the Unauthorized Sales are unenforceable agreements for the purchase of real property or otherwise reach consensual resolutions with Acres and the other party to the agreements, then the forbearance agreed to in Section 2.3 of this Agreement will terminate as to the affected Project upon entry of an adverse order.  If that occurs, Acres may elect to proceed to foreclose against that Project.

## VI. CONCLUSION

Given the current state of these proceedings, it is apparent that resolution of these disputes is not going to be as efficient as the Receiver anticipated because even if the Court denies the motions to dismiss or to compel arbitration, there are likely to be appeals. In this context and given the Construction Funding Order that specifies the order in which the proceeds from sales of units are to be distributed, with Acres first to be paid and then the other liens in their order of priority, the Receiver agrees with Srirama that the most economical pathway to resolution is to seek rejection of the agreements in the manner contemplated by the Bankruptcy Code. If there are proceeds remaining after Acres is paid, then the net proceeds will be held pending resolution of the issue of the priority of the liens, including the liens that the purchasers would then receive for the amounts that they actually paid. Accordingly, the Receiver intends to file such a motion and believes that continuing the hearing on the motions to dismiss and to compel arbitration to a date that is either concurrent with or after the date of the hearing on the rejection motion would be most efficient for everyone involved.

DATED: May 6, 2022                    Respectfully submitted,

                                      SMILEY WANG-EKVALL, LLP


                                      By:     /s/ Kyra E. Andrassy
                                           KYRA E. ANDRASSY
                                           Counsel for David Stapleton, Receiver

# PROOF OF SERVICE

**STATE OF CALIFORNIA, DISTRICT COURT, NORTHERN DISTRICT**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

On **5/6/2022**, I served true copies of the following document(s) described as **OMNIBUS OPPOSITION TO: (A) MOTION FOR ORDER: (1) COMPELLING ARBITRATION; AND (2) FINDING THAT THE RECEIVER LACKS STANDING TO ACT ON BEHALF OF ACRES CAPITAL TO RECHARACTERIZE OR INVALIDATE THE PURCHASE AND SALE AGREEMENT WITH MARWAN NABOULSI AND RANA NABOULSI; AND (B) MOTION TO DISMISS RECEIVER'S AMENDED STATEMENT OF POSITION REGARDING RECHARACTERIZATION** on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**(X) (BY COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") –** Pursuant to United States District Court, Northern District of California, the foregoing document will be served by the court via NEF and hyperlinked to the document. On **5/6/2022**, I checked the CM/ECF docket for this case and determined that the aforementioned person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated.

**( ) (BY U.S. MAIL).** I enclosed the document(s) in a sealed envelope or package and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Smiley Wang-Ekvall, LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with USPS in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Costa Mesa, California.

**( ) (BY E-MAIL).** By scanning the document(s) and then e-mailing the resultant pdf to the e-mail address indicated above per agreement. Attached to this declaration is a copy of the e-mail transmission.

**( ) (BY FACSIMILE).** I caused the above-referenced documents to be transmitted to the noted addressee(s) at the fax number as stated. Attached to this declaration is a "TX Confirmation Report" confirming the status of transmission. Executed on _____, at Costa Mesa, California.

**( ) STATE** I declare under the penalty of perjury under the laws of the State of California that the above is true and correct.

**(X) FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 6, 2022, at Costa Mesa, California.

                                                            /s/ *Lynnette Garrett*
                                                         Lynnette Garrett

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## SERVICE LIST

**BY COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**

**Kyra Elizabeth Andrassy**
kandrassy@swelawfirm.com,jchung@swelawfirm.com,lgarrett@swelawfirm.com,gcruz@swelawfirm.com

**Daniel Blau**
blaud@sec.gov,simundacc@SEC.GOV,larofiling@sec.gov

**Tamar M. Braz**
brazt@sec.gov

**Patrick Michael Costello**
pcostello@vectislawgroup.com,clee@vectislawgroup.com

**Susan Scott Davis**
sdavis@coxcastle.com

**Detail Construction & Waterproofing, Inc.**
sjs@dslaw.net

**David B. Draper**
david.draper@ropers.com,nancy.batchelder@ropers.com,mary.mcpherson@ropers.com

**Timothy W Evanston**
tevanston@swelawfirm.com,jchung@swelawfirm.com,lgarrett@swelawfirm.com,gcruz@swelawfirm.com

**Robert Paul Goe**
rgoe@goeforlaw.com,kmurphy@goeforlaw.com

**Mitchell Bruce Greenberg**
mgreenberg@abbeylaw.com,mmeroney@abbeylaw.com

**John Henry Hemann**
jhemann@cooley.com,mnarvaez@cooley.com

**Fred Hjelmeset**
fhtrustee@gmail.com

**Ravi Jagannathan**
btaylor@taylorlawfirmpc.com

**Monique Jewett-Brewster**
mjb@hopkinscarley.com,eamaro@hopkinscarley.com

**Gregg Steven Kleiner**
gkleiner@rinconlawllp.com,aworthing@rinconlawllp.com

**Edward Arthur Kraus**
ekraus@svlg.com,keb@svlg.com,edn@svlg.com,amt@svlg.com

**Joshua Robert Mandell**
joshua.mandell@akerman.com,masterdocketlit@akerman.com,alexandra.byerly@akerman.com,rob.diwa@akerman.com,evelyn.duarte@akerman.com

**Hal Mark Mersel**
mark.mersel@bclplaw.com,theresa.macaulay@bclplaw.com

**Dennis Francis Murphy**
dennismurphy@jonesday.com

**Walker Samuel Newell**
wnewell@cooley.com,efiling-notice@ecf.pacerpro.com,avera@cooley.com

**Randy Phillip Orlik**
rorlik@coxcastle.com

**Brian Andrew Paino**
bpaino@mcglinchey.com,irvineECF@mcglinchey.com

**Parkview Financial REIT LP**
paul@parkviewfinancial.com

**Marie Gisele Quashnock**
marie@aqalegal.com,legaladmin@aqalegal.com

**Meena Sathappan, TTE**
mjb@hopkinscarley.com

**Joshua Louis Scheer**
jscheer@scheerlawgroup.com,jscheer@ecf.courtdrive.com

**Brian G. Selden**
bgselden@jonesday.com,mreyes@jonesday.com

**Steven Jude Sibley**
sjs@dslaw.net
**Benjamin Samuel Taylor**
btaylor@taylorlawfirmpc.com