**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 28 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| U.S. SECURITIES & EXCHANGE COMMISSION, | No.   22-16364 |
| Plaintiff-Appellee, | D.C. No. 3:20-cv-09247-SI |
| MARWAN NABOULSI; RANA NABOULSI, | MEMORANDUM* |
| Creditors-Appellants, | |
| ACRES LOAN ORIGINATION, LLC, | |
| Creditor-Appellee, | |
| and | |
| WESTERN ALLIANCE BANK; et al., | |
| Creditors, | |
| POPPY BANK, FKA First Community Bank; et al., | |
| Creditors, | |
| DETAIL CONSTRUCTION & WATERPROOFING, INC., | |
| Claimant, | |

---

\*   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

v.

SILICONSAGE BUILDERS, LLC, AKA Silicon Sage Builders; et al.,

        Defendants,

CITY VENTURES; et al.,

        Real-party-in-interest,

v.

PARKVIEW FINANCIAL REIT LP,

        Movant,

_____

DAVID P. STAPLETON,

        Receiver-Appellee.

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Submitted June 6, 2023[**]
San Francisco, California

Before: MILLER and KOH, Circuit Judges, and CHRISTENSEN,[***] District Judge.

---

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Dana L. Christensen, United States District Judge for the District of Montana, sitting by designation.

2

Marwan and Rana Naboulsi appeal from the district court's order granting a receiver's motion to reject their purchase agreement for two condominium units. "A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion." *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). We affirm.

1. We have jurisdiction over this appeal because the district court's order was a final decision under 28 U.S.C. § 1291. "To be final, a judgment must dispose of all the rights and liabilities of at least one party as to at least one claim." *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999) (quoting *State St. Bank & Tr. Co. v. Brockrim, Inc.*, 87 F.3d 1487, 1489 (1st Cir. 1996)). Thus, in the receivership context, an order is final if it "finally resolve[s] the parties' rights to [the entity in receivership's] assets." *Id.* at 1111 (second alteration in original) (quoting *FTC v. Overseas Unlimited Agency, Inc.*, 873 F.2d 1233, 1234 (9th Cir. 1989)). The district court's order does that: By approving the receiver's rejection of the Naboulsis' purchase agreement, it establishes that the Naboulsis will receive only a lien against the units that they had originally contracted to purchase.

2. The district court did not abuse its discretion in approving the rejection of the purchase agreement. "It is well established that receivers are not liable on the contracts of [the receivership entity] by operation of law . . . ." *Irving Tr. Co. v. Densmore*, 66 F.2d 21, 23 (9th Cir. 1933). Rather, "[u]pon taking possession of the

property, [a receiver is] entitled to a reasonable time to elect whether he would adopt [such a] contract and make it his own." *Id.* (quoting *Sunflower Oil Co. v. Wilson*, 142 U.S. 313, 322 (1892)). In the analogous bankruptcy context, we have stated that "[t]he primary issue is whether rejection [of an executory contract] would benefit the general unsecured creditors." *In re Chi-Feng Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *see also Irving Tr.*, 66 F.2d at 25 ("[T]he powers of a receiver in equity are closely analogous to those of a receiver in bankruptcy . . . .").

The receiver offered a reasonable explanation of why rejection of the purchase agreement would benefit the receivership estate and its creditors. The receiver explained that "the delta between what these purchasers paid and the fair market value of the units is approximately $6 million." By rejecting the agreements and selling the units at fair market value, the receiver would "increase the amount . . . recovered from the sale of the units which can then be paid to lienholders," thereby "reduc[ing] unsecured claims against the receivership estate."

The Naboulsis argue that the receiver impermissibly "act[ed] for the sole benefit of one creditor, Acres [Loan Origination, LLC], to the detriment of other creditors." *See Chi-Feng Huang*, 23 B.R. at 801. But the Naboulsis have not shown that rejection of their purchase agreement would damage them disproportionately to the benefit that rejection has for the estate. Nor is Acres a third party who stands

to benefit at the expense of the estate's creditors. Rather, Acres—the senior lienholder on the condominium project—is itself a creditor of the estate. So long as rejection of the purchase agreement reduces the loss on the condominium project, it will benefit the receivership estate by reducing the estate's debt to Acres.

The Naboulsis claim that it was improper for Acres to pay the receiver's fees arising in connection with his administration of the condominium projects. But this arrangement does not demonstrate that the receiver was acting in bad faith or in a manner inconsistent with his fiduciary duty to the estate. The fee agreement was part of a larger construction funding agreement, under which Acres promised to give the receivership estate $400,000 out of the proceeds from the eventual sales of units in the Almaden and Osgood condominiums. The receiver explained that having Acres pay for fees incurred during construction of the condominiums "ensures that the carveouts agreed to by Acres are preserved for the receivership estate" rather than being used to pay the receiver's fees. The agreement with Acres thus ensured that, even if the condominium projects did not generate enough proceeds to fully satisfy Acres' claims against the receivership estate, the estate would still have at least $400,000 to distribute to creditors other than Acres.

Because the receiver offered a reasonable explanation for why rejection of the Naboulsis' purchase agreement is in the best interest of the receivership estate, and because there is no evidence that the receiver was acting in bad faith, the

district court did not abuse its discretion in approving rejection of the Naboulsis' purchase agreement.

**AFFIRMED.**